# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 37

### OCTOBER TERM, A.D. 2014

### March 9, 2015

SHANNAN KRIETEMEIER WRIGHT,

Appellant
(Plaintiff),

v.                                                                    S-14-0160

SHAWN BRICE WRIGHT,

Appellee
(Defendant).

*Appeal from the District Court of Teton County*
The Honorable Marvin L. Tyler, Judge

*Representing Appellant:*
        Kenneth S. Cohen of Cohen Law Office, P.C., Jackson, Wyoming.

*Representing Appellee:*
        Elizabeth Greenwood, Inga L. Parsons of Greenwood Law, LLC, Pinedale, Wyoming.

*Guardian Ad Litem:*
        Anne B. Ashley, Jackson, Wyoming.  No appearance.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Justice.**

[¶1]  Shannan Krietemeier Wright (Mother) appeals from a divorce decree awarding Shawn Brice Wright (Father) primary residential custody of the parties' two year old daughter in accordance with the parties' settlement agreement.  Mother also claims she qualifies for joint support and should not be required to both reimburse Father for visitation travel costs and pay retroactive child support.  We affirm the decree in all respects except for the provision ordering Mother to pay retroactive child support; we reverse the latter provision.

## ISSUES

[¶2]  The issues for our determination are:

> 1.      Whether Father is estopped from claiming the settlement agreement is binding because he previously took the position it was not.

> 2.      Whether the district court erred in enforcing the settlement agreement because the evidence did not show it was in the child's best interest.

> 3.      Whether Mother's child support obligation should be calculated under the joint presumptive support provision of Wyo. Stat. Ann. § 20-2-304(c) (LexisNexis 2013).

> 4.      Whether the district court erred in ordering Mother to both reimburse Father for travel costs and pay retroactive child support.[1]

## FACTS

[¶3] The parties were married in August 2011 in Jackson, Wyoming.  Their daughter was born three weeks later.  Mother filed a complaint for divorce in February 2012.  Father filed an answer and counterclaim asserting he was the aggrieved party and seeking a divorce.  The parties informally shared custody of the child after Mother filed for divorce.

[¶4]  In April 2012, Mother's employment was terminated and she attempted suicide.  She was involuntarily committed to the hospital.  Father filed a motion for an ex parte emergency order awarding him temporary custody of the child.  The parties stipulated to the appointment of a guardian ad litem and the district court entered an order pursuant to

---

[1]   In addition to these issues, Father asserts Mother's claims are not supported by cogent argument or legal authority and asks the Court to certify there is no reasonable cause for this appeal and award attorney fees pursuant to W.R.A.P. 10.05.  We decline the request.

the stipulation. The parties subsequently stipulated to a temporary custody order pursuant to which they would have joint legal custody of the child, Father would have primary residential custody and Mother would have liberal visitation. The district court entered the stipulated order in May 2012.

[¶5] In November 2012, the district court entered an order pursuant to Father's motion requiring the parties to mediate and make a good faith effort to settle the divorce proceedings. The district court imposed a February 4, 2013, deadline. The parties met with a mediator in January 2013 in an effort to reach a settlement agreement. They signed a document entitled Terms of Settlement on February 15, 2013. The document provided: "These terms will be incorporated into a final binding settlement agreement and a Decree of Divorce." As it relates to the issues on appeal, the document also provided:

> 4. Transportation. [Mother] shall bear the costs for transportation for L's visitation until such time as she begins to pay guideline child support. Thereafter, the parties shall share the responsibility and costs for transportation of L equally.

(Emphasis added.)

[¶6] Shortly after agreeing on the terms of settlement, Mother filed notice of her intent to relocate to Texas. Mother also filed a status report in April 2013 advising the district court that the parties had reached a settlement in February 2013, she had forwarded a copy to Father and Father had failed to respond. On July 2, 2013, the parties filed a joint status report stating that they were close to reaching a settlement, asking for two more weeks to complete the settlement and, in the event a settlement was not reached by July 17, 2013, asking the district court to set a scheduling conference.

[¶7] On July 18, 2013, Father filed a motion for scheduling conference stating the parties had been unable to reach a settlement on all issues. Two months later, Father filed a motion requesting the district court to enforce the "parties' February 15, 2013, settlement agreement." Father asserted in this motion that the parties had reached an agreement and signed a document entitled "Terms of Settlement" on February 15, 2013. The document provided that the parties agreed to the essential terms of divorce, child custody and visitation and those terms would be incorporated into a final binding settlement agreement. Father stated the final agreement was not signed because the parties disagreed over the sentence requiring them to equally share the responsibility and cost for transporting the child back and forth between Texas and Wyoming. Father asserted that Mother had taken the position that the language requiring the parties to equally share the responsibility for transporting the child meant Father had to transport or make arrangements for someone else to transport the child to Texas for visits with her.

2

Although Father indicated that he had taken the position during the settlement discussions that the language "share the responsibility" meant that he had to cooperate with Mother in arranging the transport, he now stated in his motion that he would agree to Mother's interpretation. More specifically, Father agreed to share responsibility for transporting the child to Texas for visitation with Mother, take responsibility for transporting the child either to or from the appropriate airport, and pay the cost of whoever accompanied the child until she was old enough to travel as an unaccompanied minor. Having made this concession, Father asked the district court to enforce the agreement the parties reached in February.

[¶8] Four days after Father filed his motion, the district court, without a response from Mother or a hearing, entered an order enforcing the parties' February 2013 agreement. The district court found that the parties had entered into a valid agreement, agreed to the terms and agreed that those terms would be incorporated into a settlement agreement. The district court concluded the disagreement concerning shared responsibility for transporting the child was not material to the essential terms of the agreement. Concluding that it had the inherent power to summarily enforce settlement agreements in order to promote the policy favoring settlement and avoiding costly and time-consuming litigation, the district court ordered the parties to execute a final settlement agreement and divorce decree in accordance with the terms of settlement and submit it for consideration.

[¶9] Two days later, Mother filed a motion asking the district court to set aside the order enforcing the settlement agreement. She contended the district court violated W.R.C.P. 6(c)(2), which allows a party affected by a motion seeking determination of final rights twenty days to request a hearing. She also asserted the district court deprived her of due process by denying her the opportunity to be heard on the motion. She further maintained that Father was estopped from seeking enforcement of the agreement because he had repudiated the terms of settlement, pursued litigation and let seven months go by without seeking enforcement of the terms. Mother also set out in detail the many ways in which she had attempted to settle the matter while Father repudiated the agreement and pursued litigation.

[¶10] Also in her motion, Mother asserted a material change of circumstances had occurred since the February 2013 settlement discussions which the district court needed to consider before entering a final custody order. That is, unlike in February when she was unemployed, Mother now had a full-time job in Texas working days with access to quality child care and in close proximity to a strong family support system. Mother further asserted that she had taken full-time maternity leave and was the child's primary caretaker from the child's birth in August 2011 until December 2011, the parties then had shared custody at Father's insistence, she agreed to Father having temporary custody only from mid-April to mid-June 2012 when she was unable to care for the child, she had custody of the child nearly 50% of the time from mid-June of 2012 until moving to Texas

3

in July 2013 and, during that same twelve month period, she had taken the child whenever the demands of Father's work schedule necessitated.

[¶11]   The district court entered an order setting aside its order enforcing the parties' agreement and set the matter for hearing.[2]   Mother then filed a response to Father's motion in which she asserted the terms of settlement signed in February 2013 did not establish a binding agreement and set out additional facts intended to show the parties had not reached a settlement and Father had repudiated any agreement.   She also reiterated that a material change of circumstances had occurred and asked the district court to consider the best interests of the child and the parties' current circumstances in determining custody.

[¶12]   At the hearing, Mother provided the only testimony.   She testified that between February 2013 when the parties agreed on the terms of settlement and September 2013, Father refused to sign an agreement requiring the parties to share responsibility for the child's travel to and from Texas.   She testified that Father subjected her to a seven hour deposition, subpoenaed her employment records, and caused her to incur substantial attorney fees.   Over Father's objection that the testimony was not relevant to the narrow issue before the court, Mother also testified about her changed circumstances.   After her testimony and the arguments of counsel, the following exchange occurred:

> THE COURT:   So what's the real issue here?   Is [Mother] really – I mean is she interested in trying to seek custody now?
> [COUNSEL]:  Yes.
> THE COURT:   Or is this a situation that she feels like she's had to go through a lot of extra post-settlement time, effort, and expense that should be taken into account before the original settlement agreement … -- and her understanding of the term "responsibility" should be enforced?  Which is it?
> [COUNSEL]:   I would tell the Court that we are not adverse to settlement, but we do not agree with settlement on the same terms and … absent [a] mutually acceptable agreement, because the last one certainly wasn't [agreed to] for seven months, she is interested in seeking custody.
> THE COURT:   Okay.  So that's – she is interested in seeking custody?
> [COUNSEL]:  Yes, she is.
> . . .

---

[2]   The order states that the district court had intended to allow a response period and had mistakenly signed the previous order.

4

THE COURT: So it would seem to me that that has to be the case here because at this point [Father] has essentially agreed to [Mother's] understanding of the term "responsibility" as originally contemplated . . . .

. . .

So what it boils down to is that the practical [e]ffect of not enforcing this agreement is that [Mother] is going to pursue a custody situation that's different than originally agreed to.

[¶13]   In December 2013, the district court entered an order enforcing the parties' February 2013 settlement agreement.  The district court concluded all of the evidence before it showed that the settlement was a binding agreement; to the extent there was any ambiguity in the term "responsibility," it was no longer relevant because Father had agreed to proceed under Mother's definition of the term; and any fault for the continued litigation after the settlement agreement lay with Mother who, the district court found, asserted a position concerning the parties' "responsibility" for transporting the child contrary to their agreement.[3]  The district court further stated:

> Wyoming Supreme Court case law indicates that stability is of the utmost importance in custody cases.  While the Agreement entered into by the parties provides for a stable environment for the child, the continuing of the contentious litigation and the ensuing acrimony between her parents does not allow for a stable environment.  Instead, it breeds uncertainty and instability for as long as there is not a permanent custody plan in place.  The Agreement is a clear agreement between the parties as to the custody arrangement for their daughter.  It is in the best interest of the child and the parties to enforce the Agreement and end the litigation.

Mother appealed the order to this Court.  We dismissed the appeal because the order was not final.

[¶14]   In January 2014, Father filed a motion asking the district court to enter a divorce decree and attached a proposed decree.  Mother objected, asserting that the proposed decree contained different language than the terms of settlement the district court had ordered enforced.  Specifically, she claimed the terms of settlement stated:

---

[3] Our review of the record does not support the conclusion that Mother was at fault for the protracted litigation or that she asserted a position contrary to the parties' agreement.  The plain language of the terms of settlement required the parties to share equally in the responsibility and cost of transporting the child yet, after signing the agreement, Father took the position that he did not have to share in that responsibility.  He maintained that position for several months despite Mother's efforts to get him to sign the final agreement.  That our reading of the record differs from that of the district court, however, does not affect our resolution of the narrow issues presented on appeal.

2. Child Support. [Mother] shall [pay Father] $50.00 per month as child support until she is employed or until the expiration of 12 months, whichever occurs sooner. Thereafter, child support shall be calculated <u>in accordance with statutory guidelines</u>. The parties agree to exchange financial affidavits on an annual basis.

She quoted the following language from the proposed decree:

5. Child Support. The presumptive child support for the parties['] child <u>with [Father] having primary physical custody of the minor child and the [Mother] having reasonable visitation</u> shall be calculated in accordance with Wyoming Statute once [Mother] files her updated Confidential Financial Affidavit.

(Emphasis in original.) She asserted the language in the proposed decree appeared to limit the district court's ability to apply the appropriate joint presumptive calculation and characterized her visitation as "reasonable" rather than "liberal" as stated in the terms of settlement.

[¶15] A few days later, Mother filed her child support calculation and financial affidavit. The district court entered an order requiring the parties to confer and resolve any conflict as to the language and submit a stipulated decree for the court's signature. The case was then re-assigned to a different judge in the same district. The parties continued to disagree about child support and the language in the decree. Mother submitted her own proposed decree. At a status conference in April 2014, counsel for the parties agreed that the district court should approve an appropriate decree according to the procedures outlined in W.R.C.P. 58.[4] Finding that Father's proposed decree more closely followed

---

[4] **Rule 58. Entry of Judgment or Order.**

(a) *Presentation*. – Subject to the provisions of Rule 55(b) and unless otherwise ordered by the court, written judgments or orders shall be presented to the court within 20 days after its decision is made known. Before submitting the judgment or order, the party drafting it shall seek to secure the written approval as to form of the other parties. If, within 10 days, approval as to form is not obtained, the party drafting the form of judgment or order may forward the original to the court and serve a copy on the other parties with a notice advising objections must be made within 10 days. If no written objection is timely filed, the court may sign the judgment or order. If objection is filed, the court will resolve the matter with or without a hearing. A party objecting shall submit an alternative form of judgment or order with the objection.

the terms of settlement, the district court approved and entered that decree. Mother appealed.

## STANDARD OF REVIEW

[¶16] Decisions involving custody, visitation and child support are committed to the sound discretion of the district court. *Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 805 (Wyo. 2014). We do not overturn a district court's decision unless we find an abuse of discretion or a violation of some legal principle. *Id*. A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Id*.

## DISCUSSION

[¶17] Mother's first contention is that Father was estopped from claiming the parties had a binding settlement agreement because for months he took the position that they did not. She asserts that from the time they reached a settlement agreement in February 2013 until he filed his motion seeking to have the agreement enforced as binding in September 2013, Father refused to sign the agreement and engaged in action inconsistent with the idea that there was a binding settlement agreement, such as pursuing discovery at substantial expense to her. She claims Father switched his position in September and sought to enforce the agreement only after realizing that her situation had improved and she might seek and be awarded custody. Father urges this Court not to address the issue, asserting Mother failed to present it in district court. He further contends Mother waived the issue when she agreed to proceed in district court under Rule 58 without a hearing.

[¶18] Contrary to Father's assertion, Mother did present her estoppel claim below. She asserted it in her September 2013 motion to set aside the order enforcing the parties' settlement agreement, in her response to Father's motion to enforce the settlement agreement and at the hearing on Father's motion. Although the district court did not expressly address Mother's claim of estoppel, it is clear from its order enforcing the settlement that it rejected the claim. Thereafter, Mother made it clear that she intended to appeal the district court order enforcing the settlement agreement and, in agreeing to proceed without a hearing before the district court entered a divorce decree, expressly stated that she was not waiving her objections to the earlier order. Mother did not waive her claim that Father should be estopped from asserting the settlement agreement was binding.

[¶19] We conclude, however, that estoppel does not apply to prevent Father from asserting the agreement was binding. In *Baker v. Speaks*, 2013 WY 24, ¶ 60, 295 P.3d 847, 861 (Wyo. 2013), this Court said:

7

Judicial estoppel is a doctrine intended to prevent a party from "blowing hot and cold"; that is, taking inconsistent positions. *City of Gillette v. Hladky Const., Inc.*, 2008 WY 134, ¶ 107, 196 P.3d 184, 212 (Wyo.2008). However, it applies to taking an inconsistent position in a subsequent case. Judicial estoppel binds a party by his judicial declarations in prior proceedings, and that party

> may not contradict them in a **subsequent proceeding** involving [the] same issues and parties.... Under this doctrine, a party who by his pleadings, statements or contentions, under oath, has assumed a particular position in a judicial proceeding is estopped to assume an inconsistent position in a **subsequent** action.

*Willowbrook Ranch, Inc. v. Nugget Exploration, Inc.,* 896 P.2d 769, 771 (Wyo.1995) (citation omitted) (emphasis added).

(Emphasis in original.)

[¶20] Under this definition, inconsistent claims made within a judicial proceeding do not create a judicial estoppel issue. That Father initially took the position that the parties had no settlement agreement did not estop him from asking the district court later in the same proceeding to enforce the agreement. It is common in litigation for a party to take one position early on and later, in an effort to resolve the matter, acquiesce to the opposing party's position. A holding that parties are estopped from doing so would stifle efforts to settle cases.

[¶21] Mother contends next that the district court abused its discretion in adopting the time-sharing arrangement the parties agreed to ten months earlier because there was no evidence that arrangement was in the best interest of the child. Before addressing the best interest question, we address Mother's characterization of the time-sharing arrangement as "joint custody." Our precedent reflects the term "joint custody" means an arrangement where each parent has the child approximately 50% of the time. *Loran v. Loran*, 2015 WY 24, ¶ 16, ___ P.3d ___ (Wyo. 2015) and cases cited therein. Even if Mother's assertion were correct that she has the child 45.48% of the time in years when the child spends Thanksgiving with her and 44.11% in alternating years, this does not constitute joint custody.

[¶22] The question then is whether the evidence showed that the parties' agreement giving Father primary residential custody and Mother liberal visitation was in the child's

best interest.  In its order enforcing the parties' settlement agreement, the district court stated:

> It is uncontested that the parties in this case are outstanding parents to their daughter and that each party should have the opportunity to have significant and meaningful interaction with their daughter.  The settlement agreement specifically contemplates each party spending significant periods of time with their daughter in large chunks to allow for more meaningful time spent together.

The district court then went on to discuss the critical importance of stability to a child's well being.  It is clear from the district court's ruling that it found the child's need for stability outweighed Mother's testimony concerning her changed circumstances.  It is also clear from the district court's order that it concluded enforcing the parties' agreement and ending the litigation served the child's best interest.  We cannot say the district court's conclusions were unreasonable or constitute an abuse of discretion.

[¶23]  Mother contends the district court improperly calculated child support under Wyo. Stat. Ann. § 20-2-304(a) (LexisNexis 2013) instead of § 20-2-304(c), which applies when each parent keeps the children overnight for more than forty percent (40%) of the year and both parents contribute substantially to the expenses of the children above and beyond any child support payments.  She asserts the latter subsection applied because she has the child more than 40% of the time and contributes substantially to the child's expenses above and beyond paying child support.

[¶24]  In accordance with the parties' settlement agreement, the divorce decree provided different visitation schedules for Mother and child dependent upon where Mother lived and the child's age.  Initially, while Mother still lived in Jackson and the child was not of school age, Mother was to have visitation three days per week.  After Mother moved to Texas, and while the child was not of school age, Mother was to have visitation with the child up to ten days per month.  Beginning the summer before the child starts kindergarten Mother will be entitled to summer visitation for four weeks.  Thereafter, Mother will be entitled to visitation for an increasing number of weeks during summer break as the child gets older.  At all times, Mother is entitled to visitation on alternating holidays, the child's birthday in alternating years, Mother's Day, and Mother's birthday.

[¶25]  The visitation schedule applicable currently and at the time the decree was entered allows Mother up to ten days per month plus alternating holidays.  Ten days per month means 120 days per year.  Neither the settlement agreement nor the decree clearly delineates all of the holidays included nor do they specify the number of days of visitation Mother is entitled to for any particular holiday.  Even assuming, however, that Mother is entitled to visitation for two days on every alternate holiday, including Martin

Luther King Day, Presidents' Day, Memorial Day, etc., that means an additional fourteen days beyond the 120 days for a total of 134 days, which is not 40% of the 365 days comprising a given year. Currently, therefore, Mother does not have the child overnight for 40% of the year and § 20-2-304(c) is not applicable.[5] The district court did not err in failing to apply the joint presumptive child support found in that statutory provision.

[¶26] Mother's final contention is that the district court erred in requiring her to reimburse Father for transportation costs of $7,523.67. The parties' agreement provided that Mother would bear the costs of transportation for visitation with the child until she began paying child support pursuant to the guidelines. After Mother began making those payments, the parties were to share equally the costs of transporting the child. Mother did not make child support payments and Father sought reimbursement of the transportation costs he incurred during the time Mother was not paying child support. The district court ordered Mother to reimburse Father for the transportation costs he incurred when Mother was not making child support payments but also ordered her to pay retroactive support for the same time period, meaning she was ordered to pay nearly twice the amount the parties' agreement required her to pay. We conclude it was error to order Mother to both reimburse transportation costs and pay retroactive child support. Given the agreement specifically contemplated that Mother would reimburse Father for transportation costs incurred when she was not making child support payments, we affirm the portion of the district court's order requiring reimbursement of the transportation costs and reverse the portion requiring retroactive payment of child support.

[¶27] The decree of divorce is affirmed in all respects except the provision requiring Mother to pay retroactive child support which we reverse.

---

[5] The decree provides that after the child reaches eight years of age, Mother is entitled to visitation for all but three weeks of summer break. Depending upon the length of summer break and whether the parties are then using the school calendar to define holidays, it may be that Mother will have the child overnight 40% of the year such that § 20-2-304(c) will apply. In that event, and upon showing that she substantially contributes to the child's expenses over and above child support, she can ask the district court to recalculate child support.