# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 135

OCTOBER TERM, A.D. 2015

October 7, 2015

IC,

**Appellant**
**(Petitioner),**

**v.**                                                       S-15-0037

DW,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Teton County*
*The Honorable James L. Radda, Judge*

*Representing Appellant:*
> James K. Lubing and Leah K. Corrigan of Lubing & Corrigan, LLC, Jackson, Wyoming

*Representing Appellee:*
> Richard J. Mulligan of Mulligan Law Office, Jackson, Wyoming; Heather Noble, Attorney at Law, Jackson, Wyoming

*Before BURKE, C.J., and HILL, KITE\*, DAVIS, and FOX, JJ.*

*\*Justice Kite retired from judicial office effective August 3, 2015, and pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (LexisNexis 2015) she was reassigned to act on this matter on August 4, 2015.*

**NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Justice.

[¶1]    Appellant Father challenges a decree awarding Mother primary physical custody of their son in a paternity case.  He contends that the district court abused its discretion in several ways by determining custody as it did.  Father also complains that the visitation schedule is not sufficiently detailed.  We affirm the district court's award of primary physical custody to Mother, but remand for further proceedings so that the district court can enter a decree that provides additional detail with regard to visitation.

## ISSUES

[¶2]    1.    Is the district court's *Decree Establishing Custody, Visitation, Child Support & Name Change*, which awarded primary physical custody to Mother, an abuse of discretion that does not serve the child's best interests?

2.    Does the decree fail to set forth a visitation plan in sufficient detail to promote understanding and compliance, in violation of Wyo. Stat. Ann. § 20-2-202(a)(i) (LexisNexis 2015)?

## FACTS

[¶3]    In February of 2013, the parties had a sexual encounter in Portland, Oregon.  Mother was attending college there, and Father was visiting from Washington, where he also attended college.  Mother became pregnant as a result of the encounter.  Thereafter, the parties attempted unsuccessfully to develop a romantic relationship while both were still living in the Pacific Northwest.  However, that effort did not work out, and their relationship became acrimonious.  Mother returned to her hometown of Jackson, Wyoming in July 2013, while Father remained in Washington.  Their child was born in Jackson in 2013.

[¶4]    This case began just before the child was born, when Father filed a petition to establish paternity, custody and support, along with a myriad of related pleadings.  After the birth, Father filed additional pleadings raising issues culminating in a trial before the district court[1] on July 22-23, 2014, concerning, *inter alia,* custody and visitation.

[¶5]    The court heard testimony from Father, Mother, family members, friends and Father's two experts, a clinical neuropsychologist and a pediatrician.  It then entered a 21-page *Decree Establishing Custody, Visitation, Child Support & Name Change*.  The court made detailed and extensive findings of fact and conclusions of law, granted the

---

[1] The matter was assigned to a circuit court judge for the Ninth Judicial District, who sat as a district judge as permitted by Wyo. Stat. Ann. § 5-3-112 (LexisNexis 2015).

1

parties joint legal custody, and awarded primary physical custody to Mother. Father was awarded visitation as more fully discussed below.

[¶6]    Father timely perfected this appeal.

## STANDARD OF REVIEW

[¶7]    Decisions that involve custody, visitation and child support are committed to the sound discretion of the district court. *Wright v. Wright*, 2015 WY 37, ¶ 16, 344 P.3d 267, 272 (Wyo. 2015). We have explained:

> It has been our consistent principle that in custody matters, the welfare and needs of the children are to be given paramount consideration. The determination of the best interests of the child is a question for the trier of fact. We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle.
>
> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. Similarly, an abuse of discretion is present when a material factor deserving significant weight is ignored.

*Stevens v. Stevens*, 2014 WY 23, ¶ 8, 318 P.3d 802, 805-06 (Wyo. 2014) (citations and internal quotation marks omitted).

## DISCUSSION

### *Primary Physical Custody Determination*

[¶8]    Father asserts that the district court abused its discretion in awarding Mother primary physical custody by (1) consistently making findings of fact that were unsupported by and contrary to the evidence presented; (2) arriving at conclusions of law that were contrary to the best interests of the child and a misapplication of the factors set

2

forth in Wyo. Stat. Ann. § 20-2-201(a); and (3) expressing clear gender bias in favor of Mother. A solicitous review of the record and decree belies his claims.

[¶9] With respect to Father's first argument, he selects certain findings of fact and contends that they are not supported by the evidence. When these findings are compared to the record and read in context, we do not find them to be unsupported.

- The parties disagreed about the length of visitation which would be in the best interest of a very young child like RW. Mother successfully sought to limit visitation to four-hour blocks because the child is so young and is nursing, while Father sought longer periods. Father contends that there is really no evidence supporting Finding No. 7 that "[e]ven 4-hour blocks of visitation have negatively affected the child's sleeping schedule." Mother, who personally observed this circumstance, testified to that effect. While Father's experts opined that generally more than four hours may not disrupt a child's sleep habits, those experts did not have the benefit of observing or even meeting the child. There was also additional evidence that provides context and support for this finding, such as that concerning the child's feeding habits. In the face of this conflict, the district court simply found Mother's testimony, which was based on actual experience, more credible. We are not at liberty to disregard it on appeal.

- Father argued for a shared parenting arrangement. Finding No. 9 states: "Because the father visits the child only once per month, mother believes that a shared parenting relationship with the child is unrealistic." Father argues that this finding omits his own beliefs, which is true, so far as it goes. However, his own testimony confirms Mother's feelings, which are reflected, *inter alia*, in Finding No. 17 (with which he does not take issue in this appeal): "Given the distance between Seattle, Washington and Jackson, Wyoming, father's employment limits his ability to visit his child to one visit per month. The father admitted the accuracy [of a trial exhibit], which shows that through June, 2014 the child has spent approximately 2.2% of his time with his father and 97.8% of his time with his mother." Even one of Father's own experts could not explain how shared parenting would work due to the geographic barrier between the parties.

- Father also takes issue with Finding No. 23, arguing that it was taken out of context from the testimony. That finding deals with one of Father's experts: "Dr. Anderson [the neuropsychologist] testified that she is not aware of anything in this case that detracts from her general opinions. She also acknowledged that more visitation by the father is limited by the father's limited travel to Jackson, Wyoming." That finding is entirely consistent with Dr. Anderson's testimony, wherein she opined that longer visits would be preferable, but acknowledged that she understood that Father's visitation was "somewhat" regulated by the amount of time that he is willing to travel to and stay in Jackson, Wyoming.

- In Finding No. 25 of the decree, the district court found that Dr. Anderson stated "that it would not benefit a child to remove the child from his primary attachment and place him in a situation where [the] child no longer regularly saw his primary caregiver" and that she acknowledged "that she knows of no circumstances in this case that warrant changing custody from the mother to the father." Father complains that Dr. Anderson actually stated it would not benefit the child to *abruptly* remove him from his primary attachment. After reading all of Dr. Anderson's testimony, we are not persuaded. Indeed, when cross-examined, Dr. Anderson conceded that under the circumstances, with the parties having never been married and having had only a very brief relationship and living so far apart, attempting to transition the child away from his primary caregiver over time with both parents in the new environment would not be very practical. Furthermore, as to the latter portion of the finding, Father delves into the semantics of the district court's use of the term "warrant." But we believe such an argument is without merit, as Dr. Anderson's testimony is clear:

  > Q. And you are not aware, are you, of any circumstances in this case that would *require* that this child be removed from his primary secure attachment?
  >
  > A. That's correct.

  (Emphasis added.) Although "warrant" may have a slightly different meaning than "require", the record supports the finding.

- Finally, Father asserts that Finding No. 27 misconstrues the testimony of his other expert, Dr. Neuman, the pediatrician. This finding explains the expert's general testimony concerning custodial and non-custodial parents and the possibility of "stranger anxiety" that can be caused by encounters with the non-custodial parent. The finding also says that "Dr. Neuman therefore advocated that the father spend more time with the child to ease the effects of stranger anxiety." When Finding No. 27 is compared to Dr. Neuman's testimony, we are unable to discern any misconstruction of that testimony.

[¶10] We have studied the record, and contrary to Father's contention, the district court's findings of fact (numbering 33 in all) are plainly supported by the evidence.

[¶11] We now turn to Father's next argument that the district court made conclusions of law that were contrary to the best interests of the child or relied on a misapplication of the factors set forth in Wyo. Stat. Ann. § 20-2-201(a). This Court has consistently said that we do not reweigh evidence; rather, we view the facts in the light most favorable to the

4

prevailing party. *Stevens*, ¶ 26, 318 P.3d at 810. In child custody determinations, the district court must base its decision on the factors set forth by statute:

> (a) In granting a divorce, separation or annulment of a marriage or upon the establishment of paternity pursuant to W.S. 14-2-401 through 14-2-907, the court may make by decree or order any disposition of the children that appears most expedient and in the best interests of the children. In determining the best interests of the child, the court shall consider, but is not limited to, the following factors:
>> (i) The quality of the relationship each child has with each parent;
>> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>> (iii) The relative competency and fitness of each parent;
>> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
>> (viii) Geographic distance between the parents' residences;
>> (ix) The current physical and mental ability of each parent to care for each child;
>> (x) Any other factors the court deems necessary and relevant.

Wyo. Stat. Ann. § 20-2-201(a).

[¶12] No single factor is determinative. *Stevens*, ¶ 26, 318 P.3d at 811. "In fact, depending on the case, different factors will present a greater need for emphasis." *Id.* The one constant is that the resolution must be in the best interests of the child in that particular family. *Id.* We have explained:

5

> To determine whether a district court has abused its discretion, we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions.
>
> To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination. He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.

*Id.* (citation omitted).

[¶13] Our review of the 21-page decree, controlling law, and the record confirms that there was sufficient evidence to support the district court's conclusion that it was in the child's best interests to give Mother primary physical custody and allow Father to develop a healthy relationship with the child through a reasonable and realistic amount of visitation. The court examined each factor set forth above and the evidence relating to it in exhaustive detail.

[¶14] We do not find it necessary to quote or explain the findings at length here. It is sufficient to say that the district court took into account the complex reality of the situation. *See Rowan v. Rowan*, 786 P.2d 886, 890-91 (Wyo. 1990). Neither of the parents intends to move closer to the other. Father's desire to form a relationship with his son, which is supported by his family, is commendable, but his employment and avocation (as a musician in a band) interfere with his efforts. Mother has put her education on hold and attended to the child nearly continuously since he was born. She lives with her mother, who is able to assist in caring with the child. Neither Father nor Mother has behaved perfectly, thus aggravating their already strained relationship, but they have not made damaging or critical mistakes as young parents.

[¶15] The district court concluded that it was in the child's best interest for Mother to have primary custody, and to award Father liberal visitation to allow him to develop a relationship with his son, as his schedule and resources permitted. The decree more than adequately articulates the court's reasoning, and it establishes, in conjunction with the record, that it did not misapply material factors nor make conclusions contrary to the evidence. *See Bingham v. Bingham*, 2007 WY 145, ¶¶ 11-17, 167 P.3d 14, 18-19 (Wyo. 2007).

[¶16] Finally, Father's argument that the court displayed gender bias is without merit. The governing statute plainly states that "[i]n any proceeding in which the custody of a

child is at issue the court shall not prefer one (1) parent as a custodian *solely* because of gender." Wyo. Stat. Ann. § 20-2-201(b). This Court has previously confronted the issue and explained:

> Consideration of gender is not prohibited in a custody determination. The governing statute simply prohibits gender from being the "sole" basis of a custody award. Every case requires careful weighing of relevant factors, looking to the unique and individual family relationships, in order to reach a resolution that is in the best interests of the children. To determine whether a district court has abused its discretion, we must rely upon the district court's articulation of the factors that were considered and how those factors support its conclusions. We have held that a gender based, maternal preference in custody awards is a mistake of law, requiring reversal.

*Donnelly v. Donnelly*, 2004 WY 72, ¶ 19, 92 P.3d 298, 306 (Wyo. 2004) (citations omitted).

[¶17] The decision was not based solely on gender. The district court adhered to its statement in the decree that "[i]n deciding to award physical custody to the mother, the court has not preferred the mother solely because of gender." It properly based its decision upon objective criteria and related evidence without gender bias.

[¶18] In sum, we have carefully reviewed the district court's decree and the evidence in its entirety, and when we view that evidence in a light most favorable to Mother, we can only conclude that the district court's custody determination was not an abuse of discretion. The findings of fact set forth in the decree are sufficiently supported by the evidence, and the district court did not consider impermissible factors or fail to consider the statutory factors.

***Visitation Plan***

[¶19] Father also contends that the district court's visitation plan is not sufficiently definite to promote understanding and compliance as required by § 20-2-202(a)(i). We agree.

[¶20] Section 20-2-202 provides in relevant part that "the court shall . . . [o]rder visitation in enough detail to promote understanding and compliance." Wyo. Stat. Ann. § 20-2-202(a)(i). In the instant case, however, the judge set forth an indistinct visitation order, which states:

> Visitation shall occur no less frequently than monthly, over a weekend or extended weekend. Visitation shall occur each day for an 8-hour period. There shall be no overnight visitation until the child is 18 months old. Visitation shall be flexible – if the father can visit more frequently than monthly, then he should be allowed to do so.

[¶21] Mother does not address this issue in her brief, perhaps because her counsel rightfully concluded that the insufficiently detailed visitation order could not be successfully defended. A decree in which custody and visitation are disputed must provide more detail so that the parents each understand their obligations, and so the decree may be enforced by contempt sanctions should that regrettably become necessary. *See Shindell v. Shindell*, 2014 WY 51, ¶¶ 8-10, 322 P.3d 1270, 1273-74 (Wyo. 2014). This is especially necessary given the parties' acrimonious relationship and the distance between them. We will therefore remand for entry of more specific visitation provisions. *See Roemmich v. Roemmich*, 2010 WY 115, ¶¶ 36-38, 238 P.3d 89, 98 (Wyo. 2010); *see also FML v. TW*, 2007 WY 73, ¶ 11, 157 P.3d 455, 460 (Wyo. 2007). The following ought to be incorporated by the district court in its revised visitation schedule:

- It should specify which weekends and holidays Father is to be allowed visitation.

- The child is now more than 18 months old, having been born in 2013. Accordingly, the schedule must provide more detail concerning overnight visits, and in particular address visitation conditions and issues relating to transferring the child between the parents.

- The schedule should provide specific dates and times for Father to communicate remotely with the child *via* Skype, FaceTime or similar means when he is in Washington and the child is in Jackson with Mother.

- It should gradually provide more visitation as the child gets older, and provide a meaningful schedule until he reaches his majority. The schedule should include visitation at Father's home when appropriate, and allocate transportation costs and, if necessary, specify details of travel. It should address summer visitation for a period appropriate to the child's age.

[¶22] We do not underestimate the difficulty of this task. Nowhere in the law would the ability to tell the future be of more value to judges, but alas, no one can. Regardless of how well the court anticipates the future of these young parents and their very young child, the decree may have to be modified in the future because our paths in life are rarely straight and absolutely defined. *See Jensen v. Milatzo-Jensen*, 2013 WY 27, ¶¶ 5-13, 297 P.3d 768, 772-73 (Wyo. 2013). But the district court must do its best to provide a detailed plan; otherwise, the parents will repeatedly return for further proceedings as the

8

child develops, to everyone's detriment. Thus, the district court must use the information the parties present to set visitation in more detail and for a longer period than it has in order to comply with § 20-2-202(a)(i), difficult though that may be.

## CONCLUSION

[¶23] The district court's decree awarding primary custody to Mother is affirmed. However, we remand so that the district court can develop a visitation plan that includes additional detail and covers a longer portion of the child's life.