# IN THE SUPREME COURT, STATE OF WYOMING

## 2020 WY 35

OCTOBER TERM, A.D. 2019

March 9, 2020

ADRIENNE JANEL EDWARDS,

Appellant
(Plaintiff),

v.

ANDY EDWARDS,

Appellee
(Defendant).

S-19-0144

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
Donna D. Domonkos, Domonkos Law Office, LLC, Cheyenne, Wyoming.

*Representing Appellee:*
No appearance.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

NOTICE:  This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.

**BOOMGAARDEN, Justice.**

[¶1]    Adrienne Janel Edwards (Mother) appeals from the district court's divorce decree. She argues the court abused its discretion when determining Father was not voluntarily underemployed, dividing the marital property as it did, and establishing Father's visitation schedule.  Andy Edwards (Father) did not file an appellate brief.  We conclude the court did not abuse its discretion in determining child support and dividing marital property, but did err by issuing a visitation order too vague to support understanding, compliance, and enforcement.  Accordingly, we affirm in part, reverse in part, and remand for the court to provide necessary detail regarding visitation.

## *ISSUES*

[¶2]    We rephrase Mother's issues:

> I.   Whether the district court abused its discretion when it concluded Father was not voluntarily underemployed.
>
> II.  Whether the district court abused its discretion by dividing marital property as it did.
>
> III. Whether the district court abused its discretion in the manner in which it ordered visitation.

## *FACTS*

[¶3]    Mother and Father married in 2001 in Utah, moved to Cheyenne three years later, and purchased a home.  In 2006, they started a landscaping business (Titan Lawn Care)—Mother performed clerical work and occasionally assisted Father with physical work. Mother filed for divorce in May 2017, and the court held a one-day bench trial in July 2018. Her appeal addresses two events which occurred while awaiting trial: Father refinanced the marital home and obtained a lower paying job.  We focus our factual discussion accordingly.

[¶4]    Father unilaterally refinanced the marital home to pay an outstanding marital tax debt after Mother filed for divorce.  Mother first learned of the refinancing when Father filed a "Motion for Allocation of Marital Funds[.]"  She requested the court order Father to deposit funds remaining from the refinancing with the court pending trial.  She later filed a "Motion for Order to Show Cause" why Father should not be held in contempt for violating the court's previous order prohibiting either party from refinancing the marital home. The court granted Mother's motion, and set a hearing.

1

[¶5]    At hearing, Father's counsel explained that Father refinanced shortly before the court entered its order prohibiting refinancing. Father realized "[a] little more than" $100,000 from the refinancing after paying off the existing mortgage, and "roughly" $77,000 remained after paying the tax bill. Father then deposited the money into his bank account, and spent $55,719 on various marital debts and home expenses. Mother agreed that Father expended some money on marital debts, but argued he also paid individual debts, such as child support.

[¶6]    The court acknowledged Mother's argument, but because Father had already refinanced and expended funds, the most the court could do was hold the remaining funds until trial and consider Father's refinancing and spending activity when equitably distributing marital property. The court ordered $14,200 of the remaining funds into the court's custody. Because the family was in a tenuous financial situation, the court divided the rest equally between Mother and Father for immediate use.

[¶7]    At trial, each party presented argument about how Father spent the refinancing funds. Mother testified that the court should reimburse her for her half of the funds Father spent on non-marital debts; she urged the court to award her specific marital assets to off-set money she argues she should have received from the refinancing. Father testified they should split the marital assets equally.

[¶8]    Father also closed Titan Lawn Care and obtained a data entry position. Father testified at trial that he closed the business primarily because it became unprofitable after Mother filed for divorce. He identified several reasons for the downturn, including employees moonlighting with business equipment and a decline in business opportunities. Father also described the difficult hours required to independently operate Titan Lawn Care and how it would prevent him from fully exercising visitation with the children. His new job allowed him to consistently work from "8:00 to 5:00[,]" with nights and weekends off. Mother argued Father was voluntarily underemployed because he had the ability to earn more and maliciously chose to make less money. She requested the court calculate Father's child support based on the income he earned while operating Titan Lawn Care.

[¶9]    The court orally announced its ruling in December, and later entered a divorce decree. The court awarded Mother principal physical and residential custody of the children, and granted Father visitation on alternating holidays and periodic weekends. The court concluded Father was not voluntarily underemployed. Accordingly, it based child support on Mother's and Father's most recent income. In distributing marital property, the court ordered Mother and Father to sell the home. The court determined Father's refinancing the home did not significantly impact the property division. Mother timely appealed.

## STANDARD OF REVIEW

[¶10]  We review the court's divorce decree for abuse of discretion.

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court. *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo. 1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo. 1995). . . . "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle." *Fink [v. Fink]*, 685 P.2d [34, 36 (Wyo. 1984)].

> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances. *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo. 1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)).  Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party. *Triggs*, 920 P.2d at 657; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994).  Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained. *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993).  Similarly, an abuse of discretion is present "'when a material factor deserving significant weight is ignored.'"  *Triggs*, 920 P.2d at 657 (quoting *Vanasse v. Ramsay*, 847 P.2d 993, 996 (Wyo. 1993)).

*Johnson v. Johnson*, 2020 WY 18, ¶ 10, — P.3d — (Wyo. 2020) (quoting *Jacobson v. Kidd*, 2018 WY 108, ¶ 14, 426 P.3d 813, 820 (Wyo. 2018)).

## DISCUSSION

### I.    Voluntary Underemployment

[¶11]  Mother argues the court erred by finding Father was not voluntarily underemployed, highlighting the fact that Father earned less money at his new job than he made while operating Titan Lawn Care.  The court considered her argument and Father's characterization of his decision to close the business.  Though the situation gave the court some pause, it found Father was not voluntarily underemployed.  There is no error in this finding. *Johnson*, ¶ 10.

3

[¶12]   A district court has sound discretion to calculate income for child support purposes. *Opitz v. Opitz*, 2007 WY 207, ¶ 7, 173 P.3d 405, 407–08 (Wyo. 2007).  Statutory provisions guide that discretion.  *Id.* ¶ 8, 173 P.3d at 408.  Wyo. Stat. Ann. § 20-2-304 outlines the presumptive child support guidelines; there is a rebuttable presumption that a calculation under these guidelines is "the correct amount of child support[.]"  Wyo. Stat. Ann. § 20-2-307(a) (LexisNexis 2019).  A court may deviate from these guidelines if their application "would be unjust or inappropriate[.]"  Wyo. Stat. Ann. § 20-2-307(b).

[¶13]   A court must consider several factors before deviating from the presumptive support amount, such as whether a parent is voluntarily underemployed.  Wyo. Stat. Ann. § 20-2-307(b)(xi).   There is no definitive test to determine whether a party is voluntarily underemployed; however, the following factors for determining an underemployed parent's earning capacity are instructive:

> (A) Prior employment experience and history;
>
> (B) Educational level and whether additional education would make the parent more self-sufficient or significantly increase the parent's income;
>
> (C) The presence of children of the marriage in the parent's home and its impact on the earnings of that parent;
>
> (D) Availability of employment for which the parent is qualified;
>
> (E) Prevailing wage rates in the local area;
>
> (F) Special skills or training; and
>
> (G) Whether the parent is realistically able to earn imputed income.

Wyo. Stat. Ann. § 20-2-307(b)(xi)(A)–(G); *Wood v. Wood*, 964 P.2d 1259, 1266–67 (Wyo. 1998).

[¶14]   The district court heard testimony concerning most of these factors.  Father never used his bachelor's degree in education.  He worked various jobs in his life, but worked in lawn care for the previous 12 years—initially with a friend, but soon after with Mother at Titan Lawn Care.  He closed the business for various reasons, testifying that his new job allowed him to fully exercise visitation with his children.  Mother argues Father could realistically earn more income by continuing to operate Titan Lawn Care.  Yet the evidence—when viewed in the light most favorable to Father—indicates the business was

failing, and Father could not independently revive a failing business *and* parent his four children as a single father. The court did not exceed the bounds of reason when, on this evidence, it found Father was not voluntarily underemployed. *Johnson*, ¶ 10.

## II.     *Division of Marital Property*

[¶15]  Mother argues the court abused its discretion by unfairly and inequitably dividing property. Specifically, she claims the court erred by not awarding her certain assets to put her in the position she would have been in had Father not refinanced the home. Without such an award, she claims Father "financially gain[ed] from his fraudulent actions" to her detriment. We conclude the court acted reasonably in rejecting Mother's request to award her specific assets to compensate for the refinancing funds Father spent on non-marital debts. *Id.*

[¶16]  Wyo. Stat. Ann. § 20-2-114(a) (LexisNexis 2019) requires a court to divide marital property "as appears just and equitable[.]" It is within the district court's "sound discretion" to dispose of such property, *Porter v. Porter*, 2017 WY 77, ¶ 12, 397 P.3d 196, 198 (Wyo. 2017) (citation omitted), and we will disturb a property division only "on clear grounds[.]" *Sinclair v. Sinclair*, 2015 WY 120, ¶ 7, 357 P.3d 1100, 1102 (Wyo. 2015) (quoting *Bagley v. Bagley*, 2013 WY 126, ¶ 7, 311 P.3d 141, 143 (Wyo. 2013)). We will not "retry the case on appeal or substitute our judgment for that of the district [court]." *Porter*, ¶ 16, 397 P.3d at 199 (citing *Lopez v. Lopez*, 2005 WY 88, ¶ 20, 116 P.3d 1098, 1103 (Wyo. 2005)).

[¶17]  Here, the court clearly articulated how Father's refinancing impacted its equitable division of the marital property. Looking at the marital property as a whole, the court noted Mother and Father had "very few assets" to divide. Their principal asset was the home, which was encumbered by a loan and multiple liens. There were credit card debts, medical debts, and "several other debts" associated with Titan Lawn Care. The court considered Father's refinancing in this context. Though the court believed Father likely committed a fraud on the bank by refinancing on his own, it recognized that the court's duty on this occasion was to order a just and equitable property division. Accordingly, the court focused on how Father spent the money. It concluded "in a very general sense," that Father "reduce[d] debts . . . [Mother and Father] would have had to pay out of that money today." If the court took a "snapshot" of the marital debts and assets before and after Father spent the refinancing funds, Mother and Father "would have wound up right where [they] are now[.]" Neither party would have benefitted from the pre-refinanced equity in the marital home—instead, if they "had a little more assets, [the court] would have reduced a little more debt." The court therefore found Father's refinancing did not impact its marital property division.

[¶18]  Mother's argument—that the court erred by not compensating her with assets equal to half the amount Father spent on non-marital debts—is unpersuasive because it disregards

the family's precarious financial situation (debts that appeared to equal or exceed assets). Given that situation, the court largely allocated marital assets to extinguish marital debts. Father generally used the refinance funds to pay down marital debt—precisely what the court would have done with the home's equity had Father not refinanced. In the end, the court did award Mother more assets and made her responsible for less debt, leaving Father "with not much by way of assets, and quite a bit more [debt] than [Mother][.]" The court did not exceed the bounds of reason under the circumstances.

## III.    *Visitation Schedule*

[¶19]  Mother argues the court's visitation plan is not sufficiently definite to promote understanding and compliance. We agree.

[¶20]  Wyo. Stat. Ann. § 20-2-202(a)(i) (LexisNexis 2019) requires a court to "[o]rder visitation in enough detail to promote understanding and compliance[.]" The degree of detail must allow for parents to understand their obligations, and for the court to enforce the decree by contempt sanctions when necessary. *IC v. DW*, 2015 WY 135, ¶ 21, 360 P.3d 999, 1005 (Wyo. 2015). The visitation schedule here is deficient because it does not designate which weekends in any given month Father will exercise his visitation, or otherwise address that deficiency by requiring Father to provide Mother timely notice of when he proposes to exercise visitation. It states:

> Unless agreed otherwise by the parties, Defendant/Father shall have regular and liberal parenting-time in accordance with the Court's *Standard Visitation Order* with the following exceptions:
>
> 1.  Father shall have two (2) weekends with the children per calendar month, unless the calendar month has five (5) weekends, then Father shall have three (3) weekends during the calendar month with five (5) weekends.
>
> 2.  Father's weekends shall have no requirement to be staggered.
>
> 3.  Father's weekends shall begin on Friday after school and conclude on Monday morning when Father delivers the children to school.

The court's Standard Visitation Order adds no further clarity.

[¶21] The court wanted to schedule visitation with more detail, perhaps by staggering weekends, but ultimately reasoned the children's extracurricular activities would conflict with a predetermined schedule. In other words, the court tried to build flexibility into the schedule. In doing so, however, the order neither obligates nor excuses Father or Mother on any given weekend. This arrangement puts Mother at a distinct disadvantage, as Father can show up, or not, without notice. The present order does not promote understanding. To the contrary, it invites dispute, and would be difficult if not impossible for the court to enforce by decree of contempt when such dispute arises. *See id.*

[¶22] The court therefore must revise its order to specify when Father will exercise weekend visitation. *See id.* ¶ 22, 360 P.3d at 1005. This detail is necessary to promote each party's understanding of their obligations and to permit the court to enforce compliance by contempt, if necessary. *Id.* ¶ 21, 360 P.3d at 1005; Wyo. Stat. Ann. § 20-2-202(a)(i).

## *CONCLUSION*

[¶23] We affirm the district court's child support calculation and marital property division. However, we remand for the district court to "[o]rder visitation in enough detail to promote understanding and compliance," in accordance with Wyo. Stat. Ann. § 20-2-202(a)(i).