# THE SUPREME COURT, STATE OF WYOMING

# 2024 WY 70

**APRIL TERM, A.D. 2024**

**June 27, 2024**

MITCHELL RATAICZAK,

**Appellant**
**(Petitioner),**

**v.**

S-23-0259

GWENDOLYN PARKER,

**Appellee**
**(Respondent).**

*Appeal from the District Court of Park County*
*The Honorable Bill Simpson, Judge*

*Representing Appellant:*
    *Amanda K. Roberts and Blake T. Godwin of Lonabaugh and Riggs, LLP, Sheridan, Wyoming.*

*Representing Appellee:*
    *No Appearance.*

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE:** **This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]     Mitchell Rataiczak (Father) appeals the district court's *Order of Paternity, Custody and Child Support* claiming the district court abused its discretion when it awarded him graduated visitation and declined to adjust his child support obligation in light of its allocation of transportation costs.  Gwendolyn Parker (Mother) did not file a brief on appeal.  We reverse and remand for further proceedings.

## ISSUES

[¶2]     Father raises the following issues:

> I.     Did the district court abuse its discretion when it set forth a visitation schedule that does not promote understanding and compliance, pursuant to Wyoming Statute § 20-2-202(a)(i), is unreasonable under the circumstances, and is otherwise not supported by the evidence?
>
> II.     Did the district court abuse its discretion regarding its allocation of transportation costs for visitation with respect to its child support order?

## FACTS

[¶3]     The parties never married, but they are the biological parents of two minor children: CRR, born in Cody, Wyoming in 2020; and BSP-R, born in Sheridan, Wyoming in 2021.  When BSP-R was three months old, the parties moved to Prescott, Arizona, where they resided as a family until May 2022.  During this time, Father provided for the family financially, and Mother provided most of the care for the children.  When BSP-R was eight months old, Mother told Father she needed to move to Cody, Wyoming, for three months to work at a veterinary clinic to obtain her "vet tech" certification.  Although Mother told him she would return to Arizona with the children after she obtained her certificate, she actually intended to end her relationship with Father and stay in Wyoming.  Believing Mother would only be gone for a short period of time, Father agreed to allow Mother to take the children to Wyoming while he continued to work and reside in Arizona.

[¶4]     In August, Father began asking Mother when she was coming back to Arizona.  She repeatedly told him she needed a little more time to obtain her certificate before returning to Arizona with the children.  Father visited Cody in September 2022 to celebrate BSP-R's first birthday.  Other than this visit, all of his contact with the children occurred through phone and video calls.  In December 2022, after Mother told him she had no intention of returning to Arizona, Father filed a petition to establish paternity, custody, visitation, and

1

child support and a motion for temporary custody. Mother filed counter petitions for temporary and permanent primary custody of the children.

[¶5] In March 2023, the district court issued a temporary custody order. The district court awarded the parties joint legal custody of the children and gave Mother primary physical custody. The district court awarded Father visitation with the children in Cody on a schedule to be worked out between the parties or their attorneys. The district court ordered Father to pay Mother the statutory presumptive amount of monthly child support, which was $798 based on the parties' incomes.

[¶6] The district court held a one-day bench trial in July 2023. Father testified he was only able to see the children in person four times after Mother moved to Wyoming: September 2022, December 2022, March 2023, and May 2023. Father currently works as an equipment operator at a mine, and his schedule is set a year in advance. Although he receives a seven day period off each month, he also has to spend some of this time caring for the horses and other animals on his property and performing yardwork and maintenance on his home. He testified it costs him approximately $2,500 each time he travels to Wyoming for a visit. Father asserted exercising his visitation exclusively in Wyoming was not sustainable, and he asked the district court to award him a block of time that he could spend with his children. Due to his mining schedule and financial constraints, Father requested visitation with the children for two months in the summer and every Christmas.

[¶7] Mother testified she obtained her "vet tech" certificate and is currently working for a veterinary hospital in Cody. Mother works 10 hour shifts, and the children are either in daycare or with their maternal grandmother when Mother is working. Mother intends to apply to veterinarian schools, none of which are located in Wyoming. Mother claimed Father was a non-participatory parent, and she had provided most of the care for the children since their births. She asserted Father was incapable of providing care for the children by himself, and she proposed a graduated visitation schedule.

[¶8] The district court issued a written order awarding the parties joint legal custody of the children and giving Mother primary physical custody. The district court created a graduated visitation schedule for Father, which was based largely on Mother's proposal. The order states in relevant part:

> **Phase I:** [Father] may exercise up to 90 days of visitation in Park County, Wyoming. The [c]ourt would hope [Father] would exercise all 90 days. However, for [Father] to move to the second phase of visitation he must make at least 40 days of visitation during the year. If not he would restart Phase I. During this phase there will be no overnights. The [c]ourt encourages the parties to work together to limit costs of transportation. If the cost of visitation is excessive and in an

2

amount exceeding $10,000.00 then the [c]ourt will look at possible joint contribution of the parties to more equally share in the transportation upon proper application to the [c]ourt.

**Phase II:** [Father] upon graduating to Phase II of visitation shall be able to exercise up to 75 days of visitation in Park County, Wyoming. The [c]ourt would hope [Father] would exercise all 75 days of visitation. However, for [Father] to move to the third phase of visitation he must make at least 25 days of visitation during the year. [Father] will also receive one (1) week over Christmas and one (1) week in the Summer. If [Father] does not exercise the 25 days of visitation during the year, then he would restart Phase II. [Father] would not have overnights for the 75 days in Park County.

**Phase III:** [Father] upon graduating to Phase III of visitation shall be able to exercise up to 65 days of visitation in Park County, Wyoming. The [c]ourt would hope [Father] would exercise all 65 days of visitation. However, for [Father] to move to the fourth phase of visitation he must make at least 20 days of visitation during the year. [Father] will also receive one (1) week over Christmas and one (1) week in the Summer. If [Father] does not exercise the 20 days of visitation during the year then he would restart Phase III. [Father] may have overnights during the 65 days in Park County.

**Phase IV:** [Father] once getting to Phase IV shall have approximately eight (8) weeks in the Summer. The parties shall work together on a schedule that allows for eight (8) weeks but this [c]ourt is not specifically ordering an eight (8) week block.

After reaching Phase IV, Father would also receive certain alternating holidays. Although the district court ordered Father to be solely responsible for transportation costs, it made no adjustment to his child support obligation and kept it at the statutory presumptive amount. This appeal timely followed.

## STANDARD OF REVIEW

[¶9]  "Child custody and visitation are within the sound discretion of the trial court." *Castellow v. Pettengill*, 2021 WY 88, ¶ 7, 492 P.3d 894, 897 (Wyo. 2021) (citing *Bruce v. Bruce*, 2021 WY 38, ¶ 12, 482 P.3d 328, 332 (Wyo. 2021)). Child support determinations are also left to the district court's discretion, which will not be disturbed on appeal absent

3

a clear abuse of discretion. *Hehn v. Johnson*, 2022 WY 71, ¶ 27, 511 P.3d 459, 464 (Wyo. 2022) (citing *Snowden v. Jaure*, 2021 WY 103, ¶ 11, 495 P.3d 882, 884 (Wyo. 2021)). However, when making a child support determination, the district court's discretion is "guided by the applicable statutory provisions." *Id.* (quoting *Johnson v. Johnson*, 2020 WY 18, ¶ 33, 458 P.3d 27, 38 (Wyo. 2020)).

[¶10] "Judicial discretion is a composite of many things, among which are conclusions drawn from objective criteria; it means exercising sound judgment with regard to what is right under the circumstances and without doing so arbitrarily or capriciously." *Evans v. Sharpe*, 2023 WY 55, ¶ 25, 530 P.3d 298, 307 (Wyo. 2023) (quoting *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018)). "A district court does not abuse its discretion if it could reasonably conclude as it did." *Sears v. Sears*, 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021) (quoting *Johnson*, ¶ 8, 418 P.3d at 822). "Judicial discretion is not absolute[.]" *Domenico v. Daniel*, 2024 WY 2, ¶ 29, 541 P.3d 420, 429 (Wyo. 2024). "Abuse occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes a serious mistake in weighing them." *Id.,* 541 P.3d at 429–30 (quoting *Ianelli v. Camino*, 2019 WY 67, ¶ 21, 444 P.3d 61, 66–67 (Wyo. 2019)). "We review the record to determine if sufficient evidence supports 'the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.'" *Id.* at ¶ 30, 541 P.3d at 430 (quoting *Bruce*, 2021 WY 38, ¶ 12, 482 P.3d at 332). "We review the district court's conclusions of law de novo." *Id.* (quoting *Castellow*, 2021 WY 88, ¶ 7, 492 P.3d at 897).

## DISCUSSION

### I. Visitation

[¶11] Father challenges the district court's visitation determination in two ways. He claims the visitation provisions are not clear enough to promote understanding and compliance, and he asserts the graduated visitation schedule is unreasonable under the circumstances and unsupported by the evidence.

### A. Are the Visitation Provisions Clear Enough to Promote Understanding and Compliance?

[¶12] Wyoming Statute § 20-2-202(a)(i) (LexisNexis 2023) requires district courts to "[o]rder visitation in enough detail to promote understanding and compliance." The visitation provisions must contain a "degree of detail" that allows "parents to understand their obligations," and enables the district court "to enforce the decree by contempt sanctions when necessary." *Edwards v. Edwards*, 2020 WY 35, ¶ 20, 459 P.3d 448, 452 (Wyo. 2020) (citing *IC v. DW*, 2015 WY 135, ¶ 21, 360 P.3d 999, 1005 (Wyo. 2015)). A proper visitation schedule should specify which days each parent is allowed, contain details

concerning overnight visitations, and specify how the visitation will change as the children get older. *Long v. Long*, 2018 WY 26, ¶ 27, 413 P.3d 117, 126 (Wyo. 2018).

[¶13]   In this case, the visitation provisions do not comply with the statutory requirements. Although the district court assigned Father a certain number of days each year he can have visitation, it failed to specify when Father can exercise his visits with the children or the duration of those visits.  Although it is clear Father is not allowed to have overnight visits in Phase I, it is unclear if his visits are supposed to last one hour or the entire ten hours Mother may be at work.  In addition, the order omits any reference to Father's mining schedule, which is set a year in advance, or to the children's school schedule, once the children reach school age. *See Walsh v. Smith*, 2020 WY 25, ¶ 25, 458 P.3d 58, 67 (Wyo. 2020) (citations omitted) (finding it is reasonable to schedule visitation around a child's school schedule to ensure the child does not consistently miss school for visitation.)  Once Father reaches Phases II and III, it is unclear where Father is allowed to exercise his week of visitation in the summer and at Christmas.  There is also no requirement for Father to provide any notice to Mother as to when he intends to exercise his visits.

[¶14]   Rather than promoting understanding and compliance, the district court's order invites disputes and would be difficult, if not impossible, to enforce by contempt should a dispute arise.[1] *See Edwards*, 2020 WY 35, ¶ 21, 459 P.3d at 453 (citing *IC*, 2015 WY 135, ¶ 21, 360 P.3d at 1005).  Because the visitation provisions fail to comply with the requirements of Wyoming Statute § 20-2-202(a)(i), we must vacate the visitation provisions of the *Order of Paternity, Custody and Child Support* and remand for the district court to revise its order to set forth visitation in enough detail to promote the parties' understanding and compliance and to permit enforcement by contempt, if necessary. *Edwards*, ¶ 22, 459 P.3d at 453.

## B. Is the Graduated Visitation Schedule Unreasonable Under the Circumstances and Unsupported by the Evidence?

[¶15]   Father claims the visitation plan is unreasonable and unsupported by the evidence. He asserts "[t]he district court exceeded the bounds of reason when it ignored the parties' testimony regarding the sustainability of frequent visitation in Park County and when it ignored the need for the parties to move forward with their lives apart from each other by requiring the parties to continue to share space in their homes, share vehicles, and share food in order to effectuate visitation for the long term."

---

[1] The likelihood of future disputes is readily apparent from the record.  Father came to Cody for a visit in May 2023.  He arrived on a Friday and left on a Monday.  Although he saw the children for at least a brief period of time each day, the parties disagreed about whether this counted as two or four days of visitation. Without specific, defined durations for the visits, the parties may disagree about when Father has completed the necessary number of visits to move to the next phase.

[¶16] To determine if a district court has abused its discretion when making a custody or visitation decision, "we must rely on the district court's articulation of the factors which were considered and how those factors support its conclusions." *Martin v. Hart*, 2018 WY 123, ¶ 20, 429 P.3d 56, 63 (Wyo. 2018) (quoting *IC,* 2015 WY 135, ¶ 12, 360 P.3d at 1004). "We have long encouraged district courts to make findings of fact in custody cases even though generally there is no requirement to do so unless there is a Rule 52(a) request." *Pettengill v. Castellow*, 2022 WY 144, ¶ 10, 520 P.3d 105, 109 (Wyo. 2022) (citations omitted).

> To play fair, a court relying on discretionary power should place on record the circumstances and factors that were crucial to its determination. The court should spell out its reasons as well as it can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of its decision.

*Id.* (quoting *Castellow*, 2021 WY 88, ¶ 10, 492 P.3d at 898). "The more 'unconventional' the arrangement, the more important it is for the [district] court to articulate its reasoning." *Booth v. Booth,* 2019 WY 5, ¶ 22, 432 P.3d 902, 909–10 (Wyo. 2019) (citing *Martin*, ¶ 20, 429 P.3d at 63).

[¶17] In this case, although the district court considered the factors set forth in Wyoming Statute § 20-2-201(a) (LexisNexis 2023), the district court provided no facts to support the graduated visitation schedule, and we can find nothing in the record to support this disposition. Father testified his work schedule and financial constraints preclude him from traveling to Wyoming on the frequency that would be required to accomplish the visitation schedule. In addition, although Mother had previously been willing to facilitate transportation to and from the airport and allow Father to stay in her home during visits, she testified she was no longer willing to do so, which will only increase Father's visitation expenses. Despite the parties' testimony, the district court stated it hoped the parties would use their best efforts to limit transportation and hotel costs to facilitate the visitation. After the district court announced its ruling, Father again reminded the district court the visitation schedule was financially unsustainable, especially in light of his child support obligation. Rather than reconsider its decision, the district court told the parties to "give this a try" and "bring it back before the court" if it did not work. The district court never explained why it was ordering Father to travel more than his work schedule or finances would allow. In addition, Mother testified she intends to move to another state to pursue veterinary school. Although the district court acknowledged her intention, it still ordered most of the visitation to be in Park County. The district court never explained its reasoning for this requirement. While there were some allegations of domestic abuse, the district court found these allegations were unsubstantiated. In addition, while Father had only provided care for the children for short periods of time, due in part to Mother's relocation, the district court found Father was a fit parent who loved the children. Yet, under the district court's visitation schedule, Father must wait until he graduates to Phase II before having a single overnight

6

visit with the children, and he will not have regular overnight visits with the children until he graduates to Phase III. Because the district court never spelled out the reasons why the graduated visitation plan was in the best interests of the children, we are unable to determine from the record whether its decision was sound or reasonable.

## II. *Child Support*

[¶18] Despite making Father solely responsible for transportation costs, the district court kept Father's child support obligation at the statutory presumptive amount of $798. Father asserts the district court abused its discretion when it declined to adjust his child support obligation in light of its allocation of transportation expenses. Father asserts the district court did so "[a]pparently believing" it was unable to reduce his support obligation because Mother received means tested income in the form of daycare assistance and Medicaid for the children.

[¶19] The district court made no such finding. Instead, the district court simply stated:

> With regard to the child support obligation, I am not going to modify it or adjust it at this time. It will continue as previously ordered, and if there are additional expenses as noted [for visitation], and they come before the [c]ourt, I will entertain a separate motion for review to determine what amount, if any, may be offset due to the increase in fuel, transportation cost, whatever it might be, inflation. It is very expensive to live in America today. It does seem that prices change frequently, but for right now the child support obligation will stand, but it might be subject to offset reduction or modification if, in fact, there are additional costs incurred by [Father] to accomplish his visitation.

The district court offered no explanation for its decision to order Father to pay the presumptive child support while also making him solely responsible for transportation expenses.

[¶20] Under Wyoming Statute § 20-2-304 (LexisNexis 2023), the number of overnights each parent keeps the child is relevant to determining the non-custodial parent's child support obligation. Because we are vacating the visitation provisions of the order, upon remand the district court should reconsider the child support amount in light of its visitation decision. Although Wyoming Statute § 20-2-304 sets forth the presumptive support amount, Wyoming Statute § 20-2-307 (LexisNexis 2023) allows a district court to deviate from this amount after considering certain factors, including the costs of transporting the children to and from visitation. While Mother does receive some forms of means tested income, we have previously held a district court may deviate from the presumptive support

amount after making the appropriate findings, even when one parent receives means tested income. *Dellit v. Tracy*, 2015 WY 153, ¶¶ 28–30, 362 P.3d 353, 358–59 (Wyo. 2015). On remand, the district court should consider whether an adjustment to Father's child support obligation or to the allocation of transportation costs is appropriate in light of its revised visitation determination.

## **CONCLUSION**

[¶21]  The district court abused its discretion when it ordered a visitation plan that is not clear enough to promote understanding and compliance. In addition, the district court never explained why the graduated visitation plan was in the best interests of the children, and we find no support for this disposition in the record. We reverse and remand this matter for the entry of a new visitation plan that contains enough detail to comply with Wyoming Statute § 20-2-202(a)(i). Based on the new visitation plan, the district court should consider whether an adjustment to Father's child support obligation or the allocation of transportation expenses is appropriate.