# IN THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 38

OCTOBER TERM, A.D. 2020

March 4, 2021

ROBERT HENRY BRUCE,

Appellant
(Defendant),

v.                                                          S-20-0118

AUBREY PAIGE BRUCE,

Appellee
(Plaintiff).

*Appeal from the District Court of Laramie County*
*The Honorable Thomas T.C. Campbell, Judge*

*Representing Appellant:*
Sarah J. Manwarren of Jacobs Law, P.C., Evington, Virginia.

*Representing Appellee:*
Linda J. Steiner and Abigail E. Fournier of Steiner, Fournier & Zook, LLC, Cheyenne, Wyoming.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**BOOMGAARDEN, Justice.**

[¶1]     Robert Henry Bruce (Father) appeals the district court's Findings, Conclusions, and Decree of Divorce in the proceedings between him and Aubrey Paige Bruce (Mother). Father argues the court abused its discretion in awarding Mother physical custody of the children and in determining his child support obligation. We affirm in all respects.

## ISSUES

[¶2]     Father presents five issues pertaining to the district court's determinations regarding child custody and support. We consolidate and restate them as:

> I.     Did the district court abuse its discretion in awarding Mother physical custody?
>
> II.    Did the district court abuse its discretion in determining the child support award?

## FACTS

[¶3]     The parties, both from Massachusetts, were married in February 2012. In June 2012, Father was stationed to Warren Air Force Base and the couple moved to Cheyenne, Wyoming. Two children were born during the marriage, BMB in 2012 and BBB in 2014. After Mother got pregnant with BBB, she became a stay at home caregiver.

[¶4]     Mother filed for divorce on January 3, 2018. The following day, she moved back to Massachusetts with the children without telling Father. Mother obtained Massachusetts state benefits to help support herself and the children, and enrolled BMB in school. Mother and the children continue to reside in Massachusetts.

[¶5]     Father filed a counterclaim for divorce and a motion for temporary custody. He requested sole custody and control of the children, alleging Mother was mentally ill, unstable, and unfit to parent. In a counter-motion for temporary custody, Mother alleged Father was mentally and verbally abusive to her and the children. Due to the competing motions, the district court appointed a Guardian Ad Litem (GAL) to represent the best interests of the children and make a custody recommendation.

[¶6]     After a hearing in July 2018, the court awarded Mother temporary physical custody subject to Father's visitation. The court ordered Father to pay "any and all transportation expenses," and set his temporary child support obligation at $0 due to the expense of

1

traveling between Wyoming and Massachusetts for visitation.[1] In January 2019, the parties settled property matters, leaving the court to determine only permanent custody, visitation, and child support.

[¶7] The district court held a three-day custody trial April 29 to May 1, 2019. Each party sought physical custody and child support. The GAL recounted his observations, explained both parties were good parents who loved their children, and recommended the court award Mother custody.

[¶8] After trial and before the court issued a decision, Father filed a motion to reopen the case to present "newly discovered evidence." At the center of his motion were allegations made to Father by James Pina, a man who claimed to have spent time with Mother regularly between February and May 2019, having sexual relations and smoking marijuana. Mr. Pina sent Father images Mother had sent him of herself and images of Mother and Mr. Pina together. Father asserted the evidence "impeaches [Mother's] trial testimony" and "would result in a different recommendation by the Court appointed [GAL]." The court held a hearing in November 2019 to consider this evidence and hear testimony from Mother. At the hearing, the GAL changed his position and recommended that Father have physical custody.

[¶9] The court entered its findings, conclusions, and decree of divorce in March 2020. In regard to the evidence involving Mr. Pina, the court found: no inconsistencies existed between Mr. Pina's deposition and Mother's trial testimony and no evidence showed Mother lied at trial; Mr. Pina's testimony was credible where it aligned with Mother's November testimony; where Mr. Pina's testimony contradicted Mother's, Mr. Pina was not credible; Mr. Pina's testimony was subject to impeachment all along because Father's father (the children's paternal grandfather) paid for Mr. Pina's attorney in another matter in Massachusetts; and, the images Mr. Pina provided lacked foundation. The district court decided it would resist the temptation to weigh this evidence against Father and instead would not consider the post-trial evidence.

[¶10] The decree awarded Mother physical custody and granted Father standard visitation rights. The court ordered Father to pay child support. Finding Father's net income was $2,734, and Mother's was $965, it set child support at the presumptive amount of $830.54 and ordered Father to pay retroactive to May 1, 2019, the last day of the custody trial. Father appealed.

[¶11] Additional facts will be included in the discussion as necessary.

---

[1] This temporary downward deviation of the presumptive child support obligation also ensured "that any child support payment would not render [Mother] and the children ineligible for public assistance [in Massachusetts.]"

*STANDARD OF REVIEW*

[¶12]  "We review the court's divorce decree for abuse of discretion."  *Edwards v. Edwards*, 2020 WY 35, ¶ 10, 459 P.3d 448, 450 (Wyo. 2020).

> Custody, visitation, child support, and alimony are all committed to the sound discretion of the district court.  *Scherer v. Scherer*, 931 P.2d 251, 253–54 (Wyo. 1997); *Triggs v. Triggs*, 920 P.2d 653, 657 (Wyo. 1996); *Basolo v. Basolo*, 907 P.2d 348, 352 (Wyo. 1995)....  "We do not overturn the decision of the trial court unless we are persuaded of an abuse of discretion or the presence of a violation of some legal principle."  *Fink [v. Fink]*, 685 P.2d [34, 36 (Wyo. 1984)].
>
> A court does not abuse its discretion unless it acts in a manner which exceeds the bounds of reason under the circumstances.  *Pinther v. Pinther*, 888 P.2d 1250, 1252 (Wyo. 1995) (quoting *Dowdy v. Dowdy*, 864 P.2d 439, 440 (Wyo. 1993)).  Our review entails evaluation of the sufficiency of the evidence to support the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party.  *Triggs*, 920 P.2d at 657; *Cranston v. Cranston*, 879 P.2d 345, 351 (Wyo. 1994).  Findings of fact not supported by the evidence, contrary to the evidence, or against the great weight of the evidence cannot be sustained.  *Jones v. Jones*, 858 P.2d 289, 291 (Wyo. 1993).

*Id.* (quoting *Johnson v. Johnson*, 2020 WY 18, ¶ 10, 458 P.3d 27, 32 (Wyo. 2020)).  We review questions of law regarding child support determinations de novo.  *Kimzey v. Kimzey*, 2020 WY 52, ¶ 13, 461 P.3d 1229, 1235 (Wyo. 2020) (citing *Walker v. Walker*, 2013 WY 132, ¶ 44, 311 P.3d 170, 179 (Wyo. 2013)).

*DISCUSSION*

## I.    *Child Custody*

[¶13]  Father challenges the district court's custody determination in two ways.  He claims it was not in the children's best interests to award Mother physical custody, and the district court abused its discretion by not following the GAL's November 2019 custody recommendation.

**A. Children's Best Interests**

[¶14]  When ruling on child custody, the district court has discretion to determine what arrangement is in the children's best interests.  *Johnson*, ¶ 12, 458 P.3d at 32 (citation omitted); *see Sears v. Sears*, 2021 WY 20, ¶ 14, 479 P.3d 767, 772 (Wyo. 2021).  Wyo. Stat. Ann. § 20-2-201(a) (LexisNexis 2019) provides that "the court shall consider, but is not limited to, the following factors" when considering custody arrangements:

> (i) The quality of the relationship each child has with each parent;
>
> (ii) The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>
> (iii) The relative competency and fitness of each parent;
>
> (iv) Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>
> (v) How the parents and each child can best maintain and strengthen a relationship with each other;
>
> (vi) How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>
> (vii) The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, including the right to privacy;
>
> (viii) Geographic distance between the parents' residences;
>
> (ix) The current physical and mental ability of each parent to care for each child;
>
> (x) Any other factors the court deems necessary and relevant.

[¶15] Father claims the district court erred in weighing these factors and awarding physical custody to Mother because that decision was "directly contrary to the evidence

presented at trial." Father's main argument is that factor (iii) should have weighed in his favor.[2] He largely relies on the post-trial testimony of Mr. Pina to support that assertion, claiming it "certainly goes to [Mother's] relative competency and fitness." He contends the district court erred when it concluded Mr. Pina's images lacked foundation and decided not to consider the post-trial evidence. Father asserts foundation for the images was proper under W.R.E. 901(a) and had the court considered this evidence, it "may have changed the outcome of trial[.]"

[¶16] We review a district court's decision on the admissibility of evidence for abuse of discretion. *Matter of L-MHB*, 2020 WY 1, ¶ 12, 454 P.3d 935, 938 (Wyo. 2020) (citing *Matter of GAC*, 2017 WY 65, ¶ 32, 396 P.3d 411, 419 (Wyo. 2017)); *see Hanson v. Beveal*, 2012 WY 98, ¶ 15, 280 P.3d 1186, 1192 (Wyo. 2012). "A trial court's rulings on the admissibility of evidence are entitled to considerable deference, and, as long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal. The appellant bears the burden of showing an abuse of discretion." *GAC*, ¶ 32, 396 P.3d at 419 (citing *Wise v. Ludlow*, 2015 WY 43, ¶ 42, 346 P.3d 1, 12 (Wyo. 2015)); *CL v. ML*, 2015 WY 80, ¶ 15, 351 P.3d 272, 277 (Wyo. 2015). "Even when a trial court errs in an evidentiary ruling, we reverse only if the error was prejudicial. The appellant must show a reasonable probability that, without the error, the [outcome] might have been different." *CL*, ¶ 15, 351 P.3d at 277 (quoting *Wise*, ¶ 42, 346 P.3d at 12).

[¶17] Father bears the burden to show the district court erred in excluding the post-trial evidence, and that the error prejudiced him. *See id*. Given the court's resolute findings regarding Mr. Pina's credibility, we conclude that even if Father could establish the district court erred by excluding this evidence, he was not prejudiced by that exclusion. The court explicitly found Mr. Pina incredible "on the matters offered to establish Mother is lying" and noted that his testimony would be impeachable because Father's family paid for his attorney in a separate, but related, Massachusetts case. The court even went a step further. Had the court considered the post-trial evidence, it indicated it would have weighed the evidence against Father, as it showed poor judgment in the lengths to which Father and his family would go "to simply win a custody fight." The court's rulings on Father's post-trial evidence demonstrate there is no reasonable probability the outcome of the custody decision would have been different had the district court considered that evidence. Father cannot show that he was prejudiced by the exclusion of this evidence, or that the court abused its discretion by weighing factor (iii) in Mother's favor.

[¶18] Father also attacks the district court's determination regarding factors (iv), (vii), and (viii), all with the same factual argument—that because Mother fled with the children to Massachusetts without telling Father, the court should weigh these factors in Father's favor. The court neither ignored nor excused the circumstances surrounding Mother's

---

[2] On factor (iii), the court found that both parents were competent despite shortcomings, but that relatively and overall, the competency and fitness factor weighed in Mother's favor.

relocation. It deemed Mother's relocation without notice to Father inappropriate, but "understandable given she had no money, no job, and no support system in Wyoming." The court weighed these circumstances, along with evidence of Mother's shortcomings, against evidence of Father's shortcomings[3] and determined it was in the children's best interests for Mother to have custody. *See Aragon v. Aragon*, 2005 WY 5, ¶ 22, 104 P.3d 756, 762 (Wyo. 2005) ("It is the district court's duty to weigh the evidence in making custody determinations."). The district court's determinations on factors (iv), (vii), and (viii) were not against the great weight of the evidence, and the court did not abuse its discretion in awarding Mother physical custody.

## B. District Court's Consideration of GAL's Recommendation

[¶19] Father also claims the district court abused its discretion by not adhering to what the GAL said was in the children's best interests and not following the GAL's November custody recommendation. Father concedes that "[t]he district court is under no compulsion to accept the GAL's recommendation." *Kimzey*, ¶ 65, 461 P.3d at 1247 (citation omitted). However, he argues, without citation to authority, that the GAL's post-trial recommendation should carry greater weight, or somehow control the court's determination. His argument fails, as we need not consider argument unsupported by relevant authority. *See Mitchell v. Preston*, 2019 WY 41, ¶ 33, 439 P.3d 718, 725 (Wyo. 2019) ("We generally refuse to consider arguments not supported by cogent argument or citation to pertinent authority." (citing *Whitham v. Feller*, 2018 WY 43, ¶ 25, 415 P.3d 1264, 1270 (Wyo. 2018))). The district court retains discretion to make a custody determination based on the factors in § 20-2-201(a), whether or not a GAL agrees or changes its recommendation. And, as discussed above, the district court did not abuse its discretion when it did not consider the evidence the GAL relied on in changing his recommendation in November.

## II. *Child Support*

[¶20] Father challenges the district court's child support award on three separate grounds. He claims the district court erred in determining Mother's net income, in ordering child support retroactive to the last date of the custody trial, and in not deviating his child support obligation downward from the presumptive amount in consideration of visitation expenses.

---

[3] These shortcomings, as noted in the court's findings, included: Father's apparent inability to understand the importance of relinquishing custody, as demonstrated by his attempt to kidnap the children through the use of force and subterfuge; the fact that Father's behavior evidenced more a desire to win than to determine the children's best interests; and the fact that Father angers easily, needs to work on age appropriate communication, is not involved with the children's schooling, and seems detached from the realities of the work he must do with them. Father does not claim these findings are clearly erroneous.

### A. Mother's Income

[¶21]  We first address Father's two-part assertion that the court abused its discretion in determining Mother's net income.

> *1. Mother's trial testimony was consistent with her Confidential Financial Affidavit (CFA), which had sufficient required supporting documentation.*

[¶22]  Wyo. Stat. Ann. § 20-2-304 (LexisNexis 2019) specifies that the parents' net monthly income is used to calculate presumptive child support. *Lemus v. Martinez*, 2019 WY 52, ¶ 19, 441 P.3d 831, 836 (Wyo. 2019).  District courts have sound discretion to calculate the parents' net monthly income. *Edwards*, ¶ 12, 459 P.3d at 451 (citing *Opitz v. Opitz*, 2007 WY 207, ¶ 7, 173 P.3d 405, 407–08 (Wyo. 2007)); *see Martin v. Hart*, 2018 WY 123, ¶ 28, 429 P.3d 56, 65 (Wyo. 2018).  Wyo. Stat. Ann. § 20-2-308(a) (LexisNexis 2019) provides: "[n]o order establishing or modifying a child support obligation shall be entered unless financial affidavits on a form approved by the Wyoming supreme court which fully discloses the financial status of the parties have been filed, or the court has held a hearing and testimony has been received."  Father argues Mother's trial testimony regarding her income was inconsistent with her CFA, and the court abused its discretion in relying on Mother's CFA.

[¶23]  At trial, Mother testified that she worked as a home health aide for a company called Brandon Woods Home Care.  Mother said she made $13.50 an hour and that she worked on average 27 to 30[4] hours a week, but that her hours fluctuate.  Mother's updated CFA, filed a few days before trial began, listed her hourly rate at $13.50 and her weekly hours at "27 approx," entirely consistent with her trial testimony.  Father's bald assertion that Mother's testimony reflects a much higher income than the $965.28 net income set forth in Mother's CFA is not supported by the record.  Affording Mother every favorable inference, we find no abuse of discretion in the court's reliance on her CFA to calculate her monthly income.

[¶24]  Father also argues Mother's CFA was deficient because it did not include her 2018 W-2.  Wyo. Stat. Ann. § 20-2-308(b) (LexisNexis 2019) requires:

> Financial affidavits of the parties shall be supported with documentation of both current and past earnings.  Suitable documentation of current earnings includes but is not limited to pay stubs, employer statements, or receipts and expenses if self-employed.  Documentation of current earnings shall be

---

[4] On direct exam, Mother said she worked approximately 27 hours per week.  When asked by Father's counsel, "you worked approximately 30 hours a week, correct?"  Mother replied, "[i]t does fluctuate, but, yes that is approximate."

7

supplemented with copies of the most recent tax return to provide verification of earnings over a longer period.

Mother did attach multiple current pay stubs, her 2017 W-2, and her 2017 and 2018 tax returns to her CFA in satisfaction of § 20-2-308(b). We found no offer of proof whereby Father could show that Mother's 2018 W-2 would have changed the court's calculations, and Father makes no such argument on appeal. Consequently, there is no statutory violation or abuse of discretion that would require us to overturn the district court's calculation.

### 2. *Massachusetts "CASH" benefits should not be included in Mother's income.*

[¶25] Mother testified at trial that she receives over $600 a month from the State of Massachusetts through a CASH assistance program.[5] Father asserts the CASH benefit should have been included in Mother's net income. We conclude the court properly excluded this benefit from Mother's income calculations because it qualified as "means tested" income under Wyo. Stat. Ann. § 20-2-303 (LexisNexis 2019).

[¶26] To the extent this determination requires us to interpret Wyo. Stat. Ann. § 20-2-303(a)(ii) our review is de novo. *See Kimzey*, ¶ 13, 461 P.3d at 1235. For the purpose of calculating child support, § 20-2-303(a)(ii) defines "[i]ncome" as "any form of payment or return in money or in kind to an individual, regardless of source." But, "[m]eans tested sources of income such as Pell grants, aid under the personal opportunities with employment responsibilities (POWER) program, supplemental nutrition assistance program and supplemental security income (SSI) ***shall not be considered as income***." Wyo. Stat. Ann. § 20-2-303(a)(ii) (emphasis added). Father argues the CASH benefit is not a Pell grant, not under the POWER program, not a nutrition assistance program, and not SSI and therefore should be included in Mother's income. Father apparently discounts the qualifier "such as" and the broad descriptor "means tested sources" in the statutory definition.

[¶27] The phrase "such as"—akin to the term "includes"—is enlarging, not exclusive. *See Rice v. Collins Commc'n, Inc.*, 2010 WY 109, ¶ 19, 236 P.3d 1009, 1016 (Wyo. 2010) (explaining the use of the word "includes" "generally signifies an intent to enlarge a statute's application, rather than limit it, and it implies the conclusion that there are other items includable, though not specifically enumerated." (quoting *Sponsel v. Park Cty.*, 2006 WY 6, ¶ 12, 126 P.3d 105, 109 (Wyo. 2006))); *Bd. of Cty. Comm'rs of Teton Cty. ex rel. Teton Cty. Sheriff's Dep't v. Bassett*, 8 P.3d 1079, 1083 (Wyo. 2000) (collecting cases). Mother testified she received the CASH assistance from the State of Massachusetts, much

---

[5] This was referred to at trial as "CASH," "CASH assistance," or "CASH assistance TAFDC."

like she receives the food assistance benefit and health insurance benefits from the State. She explained her income must be below a certain amount to qualify for state benefits:

> Q. (By [Father's counsel]) And if you work -- if you work in the state of Massachusetts or anywhere else and you report an income, it would affect your ability to get welfare benefits, wouldn't it?
>
> A. No, it depends on your income. You can work and still receive those benefits, as long as you're not exceeding their -- their cutoff.

This evidence supports that the district court properly treated Mother's CASH benefit as means tested income under the plain language of § 20-2-303(a)(ii), and excluded it from her income when it calculated child support. The court did not abuse its discretion.

## B. Retroactivity

[¶28] In its decree, the district court made Father's child support obligation "retroactive" to the last date of the custody trial. Father asserts the court abused its discretion by doing so. He argues there is "no legal authority to award retroactive child support in an initial custody determination[.]"

[¶29] Yet Father cites to no authority that requires the district court to award child support beginning only from the date of the decree. To the contrary, Wyo. Stat. Ann. § 20-2-301 (LexisNexis 2019) provides that "[w]here necessary and appropriate, the court shall enter orders, whether temporary or permanent . . . for the maintenance of children in actions for divorce[.]" As we have emphasized from the outset, the district court enjoys broad legal discretion in determining child support. *See Edwards*, ¶¶ 12–13, 459 P.3d at 451; *Marquis v. Marquis*, 2020 WY 141, ¶¶ 20, 40, 476 P.3d 212, 218, 222 (Wyo. 2020). That discretion extends to its decision regarding when the child support obligation should begin.

[¶30] The district court acted well within its statutory authority and the bounds of its discretion when it ordered temporary child support appropriate to circumstances during the proceedings, and then issued a permanent child support order, effective as of the last day of the trial. The court's "retroactive" child support order seems particularly reasonable in this case where the final decree was necessarily delayed by Father's ill-fated, post-trial attempt to undermine Mother's fitness.

## C. Consideration of Travel Expenses

[¶31] The district court's discretion to calculate child support is guided by statute. *Edwards*, ¶ 12, 459 P.3d at 451 (citing *Opitz*, ¶¶ 7–8, 173 P.3d at 407–08); Wyo. Stat. Ann.

§§ 20-2-301 through -308. Specifically, § 20-2-304 sets forth guidelines for calculating presumptive child support, and "there is a rebuttable presumption that a calculation under these guidelines is 'the correct amount of child support[.]'" *Edwards*, ¶ 12, 459 P.3d at 451 (quoting Wyo. Stat. Ann. § 20-2-307(a) (LexisNexis 2019)). Wyo. Stat. Ann. § 20-2-307(b) allows courts to deviate from the § 20-2-304 guidelines if following them "would be unjust or inappropriate," and lists factors the court shall consider before deviating. One of those factors is "[t]he cost of transportation of the child to and from visitation[.]" Wyo. Stat. Ann. § 20-2-307(b)(vii). Father argues the district court properly deviated his support obligation to $0 in the temporary order due to his visitation expenses, yet the new visitation arrangement will increase his travel expenses. Thus, according to Father, the court abused its discretion by not again deviating his permanent child support obligation downward because of those expenses.

[¶32] We will assume it was appropriate to deviate Father's child support obligation to $0 in the temporary order when he was responsible for "any and all" visitation costs. The final decree, on the other hand, relieved Father from bearing the total financial burden related to visitation. In the end, the court split visitation costs between the parents, making each responsible for their respective weekend costs. The decree further mandated that "[a]ll other costs of visitation will be borne equally by the parents, the non-custodial parent paying for the cost of bringing the child to the non-custodial parent's residence and the custodial parent paying for the cost of returning the child to the custodial parent's residence." Father provides no cogent argument why the court's decision to split visitation costs between the parents exceeded the bounds of reason. Furthermore, the record supports the court's decision not to deviate Father's obligation from the presumptive amount, particularly considering other § 20-2-307(b) factors the court was required to consider such as the children's young age, their special needs,[6] the amount of time they spend with Mother, and the value of Mother's day to day parenting services. We conclude the court properly exercised its discretion in weighing the § 20-2-307(b) factors and determined Father's child support obligation accordingly.

## *CONCLUSION*

[¶33] The district court did not abuse its discretion in awarding Mother physical custody of the children or in determining child support. We affirm.

---

[6] "[BMB] has an individual education plan (IEP) for speech and learning delay and receives additional help multiple times a week and daily help from his special education teacher." BBB goes to a special preschool for his IEP due to a speech delay, at a cost of $450 per month. BMB is also in counseling.