# THE SUPREME COURT, STATE OF WYOMING

# 2021 WY 88

APRIL TERM, A.D. 2021

August 3, 2021

CORTNI CASTELLOW,

Appellant
(Respondent),

v.

S-21-0001

BRYAN PETTENGILL,

Appellee
(Petitioner).

*Appeal from the District Court of Sheridan County*
*The Honorable William J. Edelman, Judge*

*Representing Appellant:*
    Stacy M. Kirven, Kirven Law, LLC, Sheridan, Wyoming.

*Representing Appellee:*
    Wendy S. Owens\*, Legal Aid of Wyoming, Gillette, Wyoming.

*Before FOX, C.J., and DAVIS†, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

*FOX, C.J., delivers the opinion of the Court; KAUTZ, J., files a specially concurring opinion, in which DAVIS, J., joins.*

*\* Order Allowing Withdrawal of Counsel entered July 23, 2021.*
*† Chief Justice at time of brief-only conference.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]   Bryan Pettengill (Father) and Cortni Castellow (Mother) share a child, CP.  Father filed a petition to establish custody, visitation, and child support and the district court entered a temporary custody order November 9, 2017, establishing fifty-fifty shared custody.  Mother and Father each asked for primary physical custody at the bench trial two years later.  Both parties requested written findings of fact and conclusions of law pursuant to Wyoming Rule of Civil Procedure 52(a) and, more than a year after the bench trial, the district court entered its order requiring shared custody.  Mother appealed, and we reverse and remand.

## ISSUES

[¶2]   We consolidate and rephrase Mother's issues:

> I.  Was the district court's delay in issuing the final order reversible error?
>
> II.  Are the Rule 52(a)(1)(A) findings sufficient to support the district court's order for shared custody?

## FACTS

[¶3]   CP was born in March 2013.  After Father and Mother's relationship ended, Father moved out, but remained in town.  He and Mother entered into an informal fifty-fifty shared custody arrangement.

[¶4]   In July 2017, Mother began a new relationship, which strained the informal custody arrangement.  Father filed his petition to establish custody, visitation, and child support at the end of August 2017.  On November 9, 2017, the district court entered its Order on Temporary Custody and ordered Mother and Father to share physical custody of CP, alternating weekly.  During this time, the parties had some difficulty communicating and respecting one another's parenting time and choices.  Mother is deeply religious; she accused Father of "attacking" her faith by letting CP watch the Disney movie, Hercules.  Mother also made statements to CP about Father's lack of belief—CP reportedly said that, "Dad has sinned in his heart if he didn't believe in God, then he has—he would have the devil in him."  Meanwhile, Father withheld CP from Mother for a month prior to the November 2 hearing.  After an issue arose between CP and ML, the daughter of Father's fiancée, Father suggested play therapy for CP.  Mother declined, but later decided CP should attend counseling.  Without consulting Father, Mother selected Dr. Khanh Tran.  Despite these difficulties, the parties largely adhered to the shared custody arrangement.

1

[¶5]    The district court held a one-day hearing on Father's petition September 4, 2019. At the start of the hearing, both parties requested written findings of fact and conclusions of law pursuant to Rule 52(a).  Each party also requested primary physical custody with visitation for the other parent.  Mother called Dr. Tran who testified that the current week-to-week schedule was not in CP's best interest because there was no way to easily transition between the different homes and parenting styles.  Dr. Tran also testified that shared custody could succeed, but only if both parties put in "a lot of work" to learn to effectively co-parent.  At the conclusion of the hearing, the district court expressed disappointment that neither parent advocated for a shared custody arrangement, asked the parties to submit proposed findings of fact and conclusions of law no later than September 13, 2019, and ordered the temporary arrangement to remain in place until the court issued its decision.

[¶6]    On July 24, 2020, the district court issued its decision letter.  The Court issued its final order on October 2, 2020.  Mother appealed.

## STANDARD OF REVIEW

[¶7]    Child custody and visitation are within the sound discretion of the trial court. *Bruce v. Bruce*, 2021 WY 38, ¶ 12, 482 P.3d 328, 332 (Wyo. 2021) (citing *Edwards v. Edwards*, 2020 WY 35, ¶ 10, 459 P.3d 448, 450 (Wyo. 2020)).  "A district court does not abuse its discretion if it could reasonably conclude as it did." *Sears v. Sears*, 2021 WY 20, ¶ 13, 479 P.3d 767, 772 (Wyo. 2021) (quoting *Johnson v. Clifford*, 2018 WY 59, ¶ 8, 418 P.3d 819, 822 (Wyo. 2018)).  We review the record to determine if sufficient evidence supports "the district court's decision, and we afford the prevailing party every favorable inference while omitting any consideration of evidence presented by the unsuccessful party." *Bruce*, 2021 WY 38, ¶ 12, 482 P.3d at 332 (quoting *Edwards*, 2020 WY 35, ¶ 10, 459 P.3d at 450).  We review the district court's conclusions of law de novo. *Meiners v. Meiners*, 2019 WY 39, ¶ 8, 438 P.3d 1260, 1266 (Wyo. 2019). "Interpretation of court rules is a question of law we review de novo." *Gas Sensing Tech. Corp. v. New Horizon Ventures Pty Ltd as Tr. of Linklater Fam. Tr.*, 2020 WY 114, ¶ 25, 471 P.3d 294, 299 (Wyo. 2020).

## DISCUSSION

[¶8]    Mother complains of the district court's unreasonable delay in resolving the custody dispute, she contends the district court's order is inadequate under W.R.C.P. 52, and she argues the district court abused its discretion when it ordered shared custody. The district court's delay in deciding this matter is certainly troubling, but it is not grounds for reversal.  We reverse because the district court's Rule 52(a)(1)(A) findings are insufficient to support its conclusion that shared custody was in the child's best interest in light of the testimony of CP's counselor and the district court's misunderstanding of the law regarding shared custody.

2

## I.       The District Court's Delay in Issuing the Final Order Is Not Reversible Error

[¶9]     Mother argues the district court committed reversible error when it delayed ten months and twenty days before issuing its decision letter, and thirteen months before issuing its final order.[1]  Mother argues this delay violated Rule 902 of the Uniform Rules for District Courts which states: "All civil matters taken under advisement by the court shall be decided with dispatch.  A judge shall give priority over other court business to resolution of any matter subject to delay hereunder, and if necessary will call in another judge to assist."  U.R.D.C. 902.  While the rule is sound advice to courts, it lacks both a firm standard ("dispatch" is undefined), or a sanction.  *Compare* W.R.Cr.P. 48(b)(5) ("Any criminal case not tried or continued as provided in this rule shall be dismissed 180 days after arraignment.").  Although in a different context, we have noted a particular concern when courts delay matters involving children.  *In the Int. of L-MHB*, 2017 WY 110, ¶¶ 30-31, 401 P.3d 949, 959 (Wyo. 2017).  But, in these circumstances, reversal for inordinate delay would only extend the proceeding and would not serve the purpose of expeditiously resolving cases.  The district court's delay is not a basis for reversal.

## II.      The Rule 52(a)(1)(A) Findings Are Insufficient to Support the District Court's Order

[¶10] Wyoming Rule of Civil Procedure 52(a)(1)(A) requires the district court, upon request of the parties, to issue special findings of fact separately from its conclusions of law.  The purpose of Rule 52(a) is "to indicate the factual basis for the decision on the contested matters."  *O's Gold Seed Co. v. United Agri-Products Fin. Servs., Inc.*, 761 P.2d 673, 676 (Wyo. 1988).  In child custody cases, even when Rule 52(a)(1)(A) findings have not been requested, we have "encourage[d] district courts to place on the record the facts crucial to their child custody decisions."  *Kimzey v. Kimzey,* 2020 WY 52, ¶ 38 n.2, 461 P.3d 1229, 1241 n.2 (Wyo. 2020).

> To play fair, a trial judge relying on discretionary power should place on record the circumstances and factors that were crucial to his determination.  He should spell out his reasons as well as he can so that counsel and the reviewing court will know and be in a position to evaluate the soundness of his decision.

*Id.* (quoting *Booth v. Booth*, 2019 WY 5, ¶ 22, 432 P.3d 902, 909 (Wyo. 2019)).  We have held that the requested findings do not need to be elaborate, but "need only be clear,

---

[1] We do not consider Mother's complaint about the district court's delays in other cases; this case is the only one before us.

specific and complete in concise language informing the appellate court of the underlying bases for the trial court's decision." *O's Gold*, 761 P.2d at 676 (quoting *Whitefoot v. Hanover Ins. Co.*, 561 P.2d 717, 720 (Wyo. 1977)).

[¶11]  We set forth the findings of fact and conclusions of law in the district court's order in their entirety:

> 1.)  Courts have wide discretion in "fashioning custody and visitation provisions for the best interests of the children." *Bruegman v. Bruegman*, 2018 WY 49, ¶ 11, 417 P.3d 157, 161 (Wyo. 2018).
> 2.)  The trial court's decision will not be disturbed absent a clear abuse of discretion. *Id.*
> 3.)  The best interests of the child is the most important matter for the Court to consider in making a custody determination.  Wyo. Stat. Ann. § 20-2-201.
> 4.)  In making the determination, the Court shall consider the following factors:
>   i.)  The quality of the relationship each child has with each parent;
>   ii.)  The ability of each parent to provide adequate care for each child throughout each period of responsibility, including arranging for each child's care by others as needed;
>   iii.)  The relative competence and fitness of each parent;
>   iv.)  Each parent's willingness to accept all responsibilities of parenting, including a willingness to accept care for each child at specified times and to relinquish care to the other parent at specified times;
>   v.)  How the parents and each child can best maintain and strengthen a relationship with each other;
>   vi.)  How the parents and each child interact and communicate with each other and how such interaction and communication may be improved;
>   vii.)  The ability and willingness of each parent to allow the other to provide care without intrusion, respect the other parent's rights and responsibilities, includ[ing] the right to privacy;
>   viii.)  Geographic distance between the parents' residences;

4

ix.) The current physical and mental ability of each parent to care for each child;

x.) Any other factors the Court deems necessary and relevant.

*Id.* at § 20-2-20l(a).

5.) The Wyoming Supreme Court stated in *Bruegman* that the "stability in a child's environment is of utmost importance to the child's well-being . . . [and the] success of a joint or shared custody arrangement hinges on the extent to which the parents are able to communicate and agree on the matters relevant to the children's welfare." *Bruegman*, at ¶ 13,417 P.3d at 162.

6.) After considering the testimony, the Court finds that both parents enjoy a strong relationship with the minor child.

7.) It further appears that early on in the child's life, they lived together and were both significantly involved in the child's life.

8.) The Court has considered the issue of primary care provider and even though there may be some argument that the Mother was in that position earlier in the child's life, the Court finds that it is not a significant issue in determining the custodial arrangement in this matter.

9.) It appears that both parents have appropriate housing for the child and that the child enjoys her time with both parents.

10.) Additionally, Dr. Tran indicated that during his time with the child, she expressed a desire to have a relationship with both parents, including spending significant time with each of them.

11.) Though the evidence before the Court showed that Father is currently not working, the Court notes that his unemployed status is due to him being a student, and not an unwillingness to work.

12.) Mother has steady employment, and the Court finds that both parents are able and capable of providing for the minor child.

13.) The Wyoming Supreme Court recently noted that the most favorable custodial arrangement between parents and children is a shared arrangement. *See Bruegman*, at ¶ 13, 417 [P.3d] at 162.

14.) Dr. Tran indicated that a shared custody arrangement is sometimes difficult to manage, however, the Court notes

5

that when parents effectively manage to co-parent, such arrangement is in the best interests of the child, as it allows the child to develop equally strong bonds with both parents.

15.) The Court finds that because the parents have been successful in co-parenting under the temporary arrangement they agreed to earlier, it is in the child's best interests that the current arrangement remains in place.

16.) For those reasons, the Court will adopt the <u>Temporary Order</u> as the final order in this matter.

We examine these findings in light of the particular facts of this custody modification.

[¶12] The best interests of the children are "paramount" in custody and visitation decisions. *Sears*, 2021 WY 20, ¶ 14, 479 P.3d at 772. The district court set forth the factors at Wyo. Stat. Ann. § 20-2-201(a) that courts are to consider when determining a custody arrangement in the child's best interest, but then failed to address them as they pertained to this case. No single factor is determinative. The district court "must look to the totality of the evidence and fashion a custody arrangement in the best interests of the child." *Ianelli v. Camino*, 2019 WY 67, ¶ 27, 444 P.3d 61, 68 (Wyo. 2019) (quoting *Williams v. Williams*, 2016 WY 21, ¶ 16, 368 P.3d 539, 545 (Wyo. 2016), *overruling on other grounds recognized by Sears*, 2021 WY 20, 479 P.3d 767).

[¶13] In *Bruegman v. Bruegman*, we reversed our long-standing precedent that shared custody was disfavored. 2018 WY 49, ¶ 16, 417 P.3d 157, 164 (Wyo. 2018). We held, "there is no presumption that shared custody is contrary to the best interests of the children and shared custody should be considered *on an equal footing* with other forms of custody." *Id*. (emphasis added). The district court misunderstood our holding in *Bruegman* and stated that we held shared custody was the "most favorable custodial arrangement." This misunderstanding of the law colored the district court's decision to award shared custody. "Rather than applying any presumption in favor of a particular form of custody, we focus on the best interests of the child. We therefore consider only whether this custody arrangement is in the child's best interest." *Martin v. Hart*, 2018 WY 123, ¶ 19, 429 P.3d 56, 63 (Wyo. 2018) (internal citation omitted).

[¶14] The district court's decision to continue the week-on, week-off shared custody arrangement directly contradicts Dr. Tran's testimony. At the hearing, Mother's attorney asked Dr. Tran specifically whether the week-on, week-off shared custody arrangement was in CP's best interest. Dr. Tran responded:

> I think that's a tough situation for a kiddo that age because there's so much—and you have two different parenting styles,

6

there's conflict or tension between them. There's no really ease—ease into a transition that will make her feel more comfortable. That's really tough to—to do it that way, . . . especially [with] what's going on between the parents.

The district court's order recognized that "Dr. Tran indicated that a shared custody arrangement is sometimes difficult to manage." It went on to say, without citation to any fact in the record, "the Court notes that when parents effectively manage to co-parent, such arrangement is in the best interests of the child, as it allows the child to develop equally strong bonds with both parents." This conclusion ignores Dr. Tran's testimony when he was asked whether the parents could succeed with shared physical custody:

> A. I believe they could, but there has to be conditions.
> Q. What would it take for—for them to effectively exercise [] a shared custody arrangement?
> A. Openness, the willingness to work together. I think they both have their individual problems, challenges that they could work with or work at. And I don't see that it's such a detriment that they're incapable of doing so. Actually, I find them to be both highly intellectual, highly intelligent. But there needs to be more. That in and of itself is not sufficient. They have to be emotionally intelligent too. But that—that can be cultivated.
> Q. So would you say that both of them have trouble being open and willing to work with each other?
> A. I think that they—they would be willing. I think there's a lot of resistance because of [the] context of what's going on now. . . . I understand that there is conflict there and they seem rigid in their thinking, however I think if you approach it in a very open-minded, compassionate and humble approach, that they're capable.
> Q. So would you agree that, you know, they have some issues to work on to effectively coparent?
> A. They need a lot of work. But, they can—they got to help each other in order for that to work.

[¶15]  In *Ianelli*, we reversed the district court's custody modification order because it ignored material factors relevant to the circumstances of that modification. 2019 WY 67, ¶¶ 30-37, 444 P.3d at 69-70. Similarly, in this case, the district court touched on some of the statutory factors, but ignored at least two factors important to the circumstances before it. How the parents and child interact and communicate with each other and the ability and willingness of each parent to provide care without intrusion and respect the other parent's rights and responsibilities are critical factors considering Dr. Tran's

7

testimony and the challenges the parents had been experiencing with joint custody.[2] Wyo. Stat. Ann. §§ 20-2-201(a)(vi), (vii) (LexisNexis 2019). Yet these are factors the district court disposed of in a perfunctory manner, misconstruing both Dr. Tran's testimony and the law regarding shared custody. Perhaps a more robust finding of fact and conclusion of law, as the parties requested under W.R.C.P. 52(a)(1)(A), would have permitted this Court to defer to the district court's discretion. But, based on the district court's meagre analysis, its clearly erroneous finding regarding the likelihood of success for shared custody, and its misunderstanding of the holding in *Bruegman*, we conclude the district court abused its discretion when it ordered shared custody.

## *CONCLUSION*

[¶16] The district court's delay in resolving this matter is not grounds for reversal. The district court abused its discretion when it erroneously held the law favors shared custody and ordered shared week-on, week-off custody without adequate Rule 52(a)(1)(A) findings and conclusions explaining how the arrangement was in CP's best interest despite Dr. Tran's testimony to the contrary. We reverse and remand.

---

[2] We have recognized that when the "evidence supports the district court's decision, the 'failure to explicitly comment on a statutory factor in the district court's opinion letter or order does not necessarily indicate that the court failed to consider that factor.'" *Shipley v. Smith*, 2020 WY 26, ¶ 13, 458 P.3d 852, 856 (Wyo. 2020) (quoting *Paden v. Paden*, 2017 WY 118, ¶ 12, 403 P.3d 135, 140 (Wyo. 2017)). We have not applied that leniency to cases in which Rule 52(a)(1)(A) findings were requested, nor do we find that the evidence here supports the district court's decision.

**KAUTZ, Justice,** specially concurring, in which **DAVIS, Justice, joins.**

[¶17]  I fully concur in the majority opinion.  I find it necessary, regretfully, to comment further on Mother's complaint about the district court's delay in rendering a decision. The majority correctly notes that "the district court's delay is not a basis for reversal."  It also correctly points out that Uniform Rule of District Courts (U.R.D.C.) 902, which requires trial courts to decide matters with "dispatch," provides no specific timeliness standard, nor does it contain any sanction applicable to the trial judge for a delay.  In her brief, Mother implored this Court that "until importance is placed on district court judges to follow U.[R.D.C.] 902" litigants, including families and children, will suffer from inappropriate delays.  The majority opinion properly did not reply to that entreaty. Although Mother's plea cannot serve as a basis for our decision, her concerns are not unheard.  This special concurrence provides a response.

[¶18]  The circumstances of this case are not typical of the vast majority of district courts in Wyoming.  Our district courts can, and should, be proud of the service they provide to Wyoming litigants.  In FY 2018, when this case was filed, the 23 Wyoming District Court Judges handled 17,080 cases.  (District Court Statistics, www.courts.state.wy.us). Unfortunately, the timing in this case appears to fall far short of providing appropriate service to litigants and of the typical performance of district courts.

[¶19] Father filed this case on August 31, 2017.  Mother filed an answer and counterclaim on October 5, 2017.  The district court signed a temporary custody order a month later.  Inexplicably, more than a year passed without a scheduling conference, scheduling order, or any type of action from the district court.  In early December 2018, the district court finally filed a notice of intent to dismiss because there had been "no diligent activity by the parties herein for more than ninety (90) days."[3]  That notice required written responses within 20 days demonstrating why the case should not be dismissed.  Father never responded.  Mother submitted a response 78 days later stating she was finding a new attorney.  Still, the district court allowed the case to languish.  It did not set any scheduling conference, and apparently ignored its own notice of intent to dismiss.  At Mother's request, the district court finally set a scheduling conference for March 25, 2019, or 571 days after this case began.  The district court ordered a bench trial for August 8, 2019, but on its own motion changed that setting to September 4, 2019, more than 2 years after the parties asked the court to resolve their family differences.

---

[3] W.R.C.P. 41(b)(2) states "[u]pon its own motion, after reasonable notice to the parties, the court may dismiss, without prejudice, any action not prosecuted or brought to trial with due diligence."  U.R.D.C. 203(c) states "[c]ases on the docket in which no substantial and bona fide action of record towards disposition has been taken for 90 days are subject to dismissal for lack of prosecution."

[¶20]  On September 12 and 13, 2019, shortly after the bench trial, the parties submitted extensive proposed findings of fact, conclusions of law, and orders.  Additional months passed with the parties in limbo, uncertain about custody of their child.  Mother's attorney represents that during the ensuing months both parties inquired of the district court as to when a decision would be issued and were assured a decision would be rendered "soon."  On July 16, 2020, more than 10 months after the bench trial and the proposed findings had been submitted, Mother filed a written request for a status conference because the court had not issued a decision.  The district court did not set a status conference, but finally issued a decision letter on July 24, 2020, nearly 3 years after this case began.  The decision letter begins:  "My apologies for the lateness in the decision in this matter.  I have recently had a staffing change that in some part caused the delay in getting this out.  I sincerely apologize for that to both the parties and counsel."

[¶21]  The timely resolution of cases is fundamental to the judicial system.  Timeliness in rendering justice has long been recognized as essential.  "To none will we sell, to none will we deny, to none will we delay right or justice."  Magna Carta, Clause 40, reprinted in Senate Document No. 232, 66th Cong., 2d Sess. 17.  George Washington observed that "the due administration of justice is the firmest pillar of good government."  https://www.loc.gov/resource/mgw2.022/?sp=177&st=text#:~:text=Dear%20Sir%3A%20 0Impressed%20with%20a,the%20selection%20of%20the%20fittest.  Conversely, failure to provide timely and appropriate administration of justice—failure to timely resolve litigants' disputes—destroys confidence in our system of government.  United States Supreme Court Chief Justice Warren Burger aptly described the effect of delays in court proceedings and decisions:  "A sense of confidence in the courts is essential to maintain the fabric of ordered liberty for a free people and three things could destroy that confidence and do incalculable damage to society:  **that people come to believe that inefficiency and delay will drain even a just judgment of its value;** that people who have long been exploited in the smaller transactions of daily life come to believe that courts cannot vindicate their legal rights from fraud and over-reaching; that people come to believe the law – in the larger sense – cannot fulfill its primary function to protect them and their families in their homes, at their work, and on the public streets."  Burger, Warren E., "What's Wrong With the Courts:  The Chief Justice Speaks Out (address to ABA meeting, Aug. 10, 1970)." *U.S. News & World Report* (Vol. 69, No. 8, Aug. 24, 1970) 68, 71 (emphasis added).  Wyoming has always recognized the importance of judicial timeliness, and Wyoming's Constitution guarantees litigants the right to "have justice administered **without sale, denial or delay**."  Wyo. Const., art. 1, § 8 (emphasis added).

[¶22]  Although courts inherently have the power to supervise and control their dockets (*see State ex rel. Buck v. McCabe*, 140 Ohio St. 535, 537, 45 N.E.2d 763, 765 (1942)), this power is confined by the responsibility to efficiently administer justice.  There may be two failures on the part of the district judge in this case to efficiently administer justice.

[¶23]  First, a case the parties represent as a legally uncomplicated custody matter took over 2 years to get to trial.  Although the case may have been uncomplicated, it involved the parents' lives and custody of their child.  To them, delay precluded any sense of certainty or permanency and conveyed the message that their lives were not important to the judicial system.  The trial judge could have (should have) set a scheduling conference and a schedule shortly after the case was filed.  W.R.C.P. 16(b) permits a judge to hold a scheduling conference and set a schedule.  Although the rule states that the judge "may" set a schedule,[4] W.R.C.P. 16(b)(2) states "the judge **must** issue the scheduling order as soon as practicable."  (Emphasis added).  The rule obviously recognizes litigants need a schedule early in the legal proceedings.  Absent some compelling reason, the constitutional requirement that justice be administered without delay requires an early scheduling conference and schedule in every case, despite W.R.C.P. 16 using the permissive word "may."  Further, the trial judge could have (should have) utilized W.R.C.P. 41(b)(2) and U.R.D.C. 203(c) when there was a gap of 90 days in substantial and bona fide action in the case.  The district court could have easily used the electronic docketing system employed by all Wyoming courts to find cases where no action was occurring.  The lack of progress and the lack of a schedule in this case should have been addressed in mid-February 2018, nearly 10 months before the trial court did anything.  Once the district court issued its notice to dismiss in December 2018, it should have enforced the order or set a firm schedule.  The due administration of justice requires firm schedules and compliance with court orders.  Without them, unconstitutional delay is likely.

[¶24]  The district court's delay in rendering a decision is the second apparent failure to duly administer justice in this case.  U.R.D.C. 902 requires judges to decide matters taken under advisement "with dispatch."  Dispatch is defined as sending something off "with promptness or speed."  https://www.merriam-webster.com/dictionary/dispatch.  To carry out a task "with dispatch" is to do so "quickly and effectively." https://dictionary.cambridge.org/us/dictionary/english/with-dispatch. The rule emphasizes the need to issue decisions quickly, by **requiring** a district judge to give matters taken under advisement priority over all other court business.  The rule provides that the judge **will** call in another judge to assist with other court business if necessary, so matters under advisement can be completed in a timely manner.

[¶25]  Although the record and procedure in this case did not and could not analyze whether the trial court violated U.R.D.C. 902, there is a procedure and forum where such an analysis should occur.  Wyoming's Code of Judicial Conduct (W.C.J.C.) has numerous provisions which apply to the prompt administration of justice.  For example,

---

[4] F.R.C.P. 16(b)(1) requires a scheduling order.  "Except in categories of actions exempted by local rule, the district judge . . . must issue a scheduling order . . . ."  Wyoming should adopt the federal approach.

Rule 1.1 of the Code requires a judge to comply with the law, which includes U.R.D.C. 902. Rule 2.1 requires the duties of judicial office, as prescribed by law (including U.R.D.C. 902), "shall take precedence over all of a judge's personal and extrajudicial activities." Rule 2.5 requires a judge to "perform judicial and administrative duties competently, promptly, efficiently and diligently." Comment 3 to this rule recognizes "prompt disposition of the court's business requires a judge to devote adequate time to judicial duties, to be punctual in attending court and expeditious in determining matters under submission, and to take reasonable measures to ensure that court officials, litigants, and their lawyers cooperate with the judge to that end." W.C.J.C. Rule 2.5 cmt. 3. Rule 2.7 provides "[a] judge shall hear and decide matters assigned to the judge, except when disqualification is required by Rule 2.11 or other law." To the extent that court staff or officials are involved with scheduling or monitoring the docket, Rule 2.12 compels the judge to require them to comply with the Code.

[¶26] The Wyoming judicial branch capably polices itself, preserving accountability of judges and separation of powers. This accountability is provided through the Wyoming Commission on Judicial Conduct and Ethics. The Commission reviews whether a judge has violated one or more portions of the Code, either on the basis of a complaint or on its own motion.

[¶27] In her brief, Mother mentions other cases decided by this district judge. Father responds that in each of those cases the length of time to decision was not an issue on appeal. However, the facts recited in the appellate decisions indicate the following:

> *Meehan-Greer v. Greer*, 2018 WY 39, 415 P.3d 274 (Wyo. 2018). The district court issued a custody decision more than 6 months after trial.

> *Johnson v. Clifford,* 2018 WY 59, 418 P.3d 819 (Wyo. 2018). More than 6 months passed after an evidentiary hearing before the district court issued a custody order.

> *Ianelli v. Camino,* 2019 WY 67, 444 P.3d 61 (Wyo. 2019). The district court issued a custody order 5 months after trial.

> *Jarvis v. Boyce,* 2019 WY 124, 453 P.3d 780 (Wyo. 2019). The district court issued a child support decision 9 months after the trial.

[¶28] The circumstances of those or any other cases are not in the record before us, and we cannot determine at this point whether those decisions were issued "with dispatch." However, the Wyoming Commission on Judicial Conduct and Ethics can review any and all of the cases handled by a district judge and develop the appropriate

facts.  The Commission can monitor timeliness in the future.  The appropriate entity to address the timeliness complaint in this case is the Commission.

[¶29]  Judicial ethics commissions around the country have imposed significant consequences on judges who failed to timely provide justice, especially when delay is habitual.  For example, Indiana suspended a judge for 60 days without pay for delays in ruling on prisoners' petitions for post-conviction relief.  *In the Matter of the Honorable Grant W. Hawkins,* 902 N.E.2d 231 (Ind. 2009).  Louisiana suspended a judge without pay for 30 days for failure to timely issue decisions and for not reporting his backlog.  *In re Judge Marcus Clark,* 866 So.2d 782 (La. 2004).

[¶30]  Although the Code of Judicial Conduct and U.R.D.C. 902 do not contain specific timelines for completion of cases, the Wyoming District Judges' Conference adopted the Model Time Standards for State Trial Courts as published by the National Center for State Courts **as a goal.**  Rule 113, Rules Governing the Organization of the District Judges' Conference.  Those standards provide for 90% of domestic cases to be completed within 180 days, and 98% within 365 days. *http://ncsc.contentdm.oclc.org/cdm/ref/collection/ctadmin/id/1836.*  Those standards may be admirable goals, but Wyoming citizens, litigants, attorneys, and judges deserve more than goals.  Specific case completion timelines and requirements for issuing decisions within specific timeframes are needed to assure the due administration of justice.  Some states have adopted 60 days as the required time frame for deciding cases under advisement.  *See* Arizona Supreme Court Rule 91.  Other states have adopted 90 days. *See   Complaint Against Grady,* 118 Wis. 2d 762, 348 N.W.2d 559 (1984) and https://www.jddc.arkansas.gov/wp-content/uploads/2020/05/Edwin-Keaton2012.pdf.    It is incumbent on Wyoming's judiciary to adopt specific timelines for both completion of court proceedings and issuance of decisions.